THE TRUSTEES OF RUTGERS UNIVERSITY, PROSECUTOR,
v. THE TOWNSHIP OF PISCATAWAY, IN THE COUNTY
OF MIDDLESEX, A MUNICIPAL CORPORATION, AND
THE STATE BOARD OF TAX APPEALS, RESPONDENTS.

Submitted October 2, 1945—Decided March 7, 1946.

Before Justices DONGES, HEHER and COLIE.

For the prosecutor, *Fred W. DeVoe* (*William F. McCloskey,* of counsel).

For the respondent Township of Piscataway, *Maurice M. Bernstein.*

The opinion of the court was delivered by

COLIE, J.   The main campus of Rutgers University is located in the City of New Brunswick, south of the Raritan River.   In 1935 the university acquired a tract of approximately 138 acres north of the Raritan River in the Township of Piscataway.   In 1936 the trustees decided to improve the facilities for physical education and in furtherance of that decision, the entire acreage of 138 acres was graded, drained and landscaped for use as athletic fields.   On one part of the tract there was a natural ravine, at the bottom of which a

football playing field, surrounded by an elliptical running track, was built. The natural slope of the west and north sides of the ravine were covered by concrete stands extending from the level of the playing field to the top of the slope and so constructed as to furnish seats for spectators. On the east side of the playing field, a field house was constructed which contained a locker room with 350 or 400 lockers, shower baths, dressing, wash, boiler, storage, trainers' and physicians' rooms. The roof of this field house sloped down from the top of the ravine to the level of the playing field and was so constructed as to provide additional seats for spectators. The seating capacity on the three sides of the stadium afforded accommodations for 20,000 spectators.

For the year 1942 the Township of Piscataway assessed a tax against the stadium property in the sum of $75,625, of which $15,625 was allocated to the land and $60,000 to the improvement thereon. Rutgers University appealed the assessment to the County Board and then to the State Board of Taxation, both of which affirmed the assessment. It then applied for and was allowed a writ of *certiorari* on the ground that the stadium property was exempt from taxation, and a further writ on the ground that the assessment was in excess of true value.

If this property is exempt from taxation, the authority for such exemption must be found in *R. S.* 54:4–3.6, the pertinent part of which reads:

"The following property shall be exempt from taxation under this chapter: All buildings actually used for colleges, schools, academies or seminaries; * * * the land whereon any of the buildings hereinbefore mentioned are erected, and which may be necessary for the fair enjoyment thereof, and which is devoted to the purposes above-mentioned and to no other purpose and does not exceed five acres in extent; * * *."

It is entirely settled that statutes granting exemption from taxation are in the nature of a renunciation of sovereignty; that the burden of proof of facts to warrant exemption is upon the claimant and that tax exemption statutes are to be construed strictly against the one claiming exemption. *Sis-*

*ters of Charity of St. Elizabeth* v. *Cory,* 73 *N. J. L.* 699; *Trenton* v. *Rider College,* 127 *Id.* 105; *affirmed,* 128 *Id.* 320. Whether or not Rutgers University is entitled to tax exemption must depend upon the particular facts and circumstances. The testimony is clear that since 1933 Rutgers University has had as a part of its curriculum, a course in physical education in which all students are required to participate; that a physical education program is a necessity in a properly conducted college. The evidence also shows that in October, 1941, the registration at the university was 1,684 and that the field house which is a part of the stadium was used by between 300 and 400 students and that such use was largely restricted to the spring of the year and the months of September, October and November. It is significant that the university bulletin describes this structure as "the Stadium area on the River Road Campus comprising an exhibition football field and stadium, exhibition baseball field, twelve-land cinder track within the Stadium." There is no doubt but that physical education is a proper field for instruction in a modern college but even so it is difficult to see how these concrete stands for spectators and the field house beneath one of them can be said, in the words of the statute, to be "buildings actually used for colleges." During the fall months football games are played in the stadium to which the general public is admitted upon the payment of an admission fee. We fail to see any necessity for the construction of stands to accommodate 20,000 spectators when the enrollment of the university is under 1,700. The fact that provision is made for such a large number of spectators, each of whom is admitted upon the payment of an admission fee, points to the conclusion that the stadium was designed with an eye to spectator revenue rather than with an eye to the physical education of the student body. It seems patent that the primary purpose intended to be served by the stadium was to provide a place where the teams of Rutgers University might play its football games, with ample opportunity for spectators to attend. This court will take judicial notice of the fact that football is ordinarily played in the months of September, October and November—at most thirteen weeks; that varsity

football teams do not ordinarily play more than one football game a week and that the actual playing time of a game is one hour. When the legislature wrote into the exemption statute the phrase "actually used for colleges" it meant something more than an occasional or incidental use. If an occasional use for college purposes was sufficient to warrant exemption from taxation, it would result in exemption from taxation for any and all college buildings upon a showing that they were used in the college activities to any extent, however slight. In the present case the stadium was built for the primary purpose of providing a place where the general public, on payment of an admission fee, might indulge its fancy to witness athletic contests and any use for the purpose of the educational function of the university was merely incidental to the primary purpose.

Passing to the *quantum* of the assessment, we see no merit in the argument advanced by the prosecutor. The stadium was assessed at $60,000 and in order to attack the amount of the assessment, the university called as a witness a real estate expert who said that he didn't think that anyone would buy the stadium at all and the university argues that the assessment be reduced to $3,000 and states its reason to be that that sum "represents the value of a building located on said lands, and assessed in previous years for the sum of $3,000, and which building has since been demolished." This argument seems to us a *non sequitur* and wholly without merit. There is evidence that the cost of the stadium was between $1,000,000 and $1,250,000 and in light of that fact, we fail to see how an assessment of $60,000 on the stadium can be attacked as being in excess of true value.

The writs of *certiorari* are dismissed, with costs.