32 N.J. Super. 124 (1954)
108 A.2d 28
COUNTY BANK AND TRUST COMPANY, EXECUTORS OF THE LAST WILL AND TESTAMENT OF JOHN G. VOLKER, DECEASED, AND THE WARTBURG ORPHAN FARM SCHOOL, AS RESIDUARY LEGATEE, APPELLANTS,
v.
AARON K. NEELD, DEPUTY DIRECTOR, ACTING AS DIRECTOR, DIVISION OF TAXATION, DEPARTMENT OF THE TREASURY, RESPONDENT. IN THE MATTER OF THE TRANSFER INHERITANCE TAX ASSESSMENT IN THE ESTATE OF JOHN G. VOLKER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1954.
Decided September 21, 1954.
*125 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. John M. DeYoe argued the cause for appellants (Messrs. DeYoe & DeYoe, attorneys).
Mr. William A. Moore, Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General of New Jersey).
The opinion of the court was delivered by JAYNE, J.A.D.
One John G. Volker, a resident of Wycoff, Bergen County, New Jersey, died testate on November 18, 1951. It is sufficiently explanatory to state that by paragraph "Second" of his last will and testament he bequeathed $500 to the Wartburg Orphans' Farm School of the Evangelical Lutheran Church, located at Mt. Vernon, Westchester County, New York, and by paragraph "Seventh" he established a residuary trust for the benefit of his widow *126 and devised and bequeathed upon the termination of the trust by her death three-fourths of the corpus of the trust also to the Wartburg Orphans' Farm School.
In estimating the amount of the transfer inheritance tax assessment to be levied upon the testamentary transfers to Wartburg Orphans' Farm School, hereinafter designated as Wartburg, the Division of Taxation pursuant to R.S. 54:36-1 valued the three-fourths interest of the principal of the residuary trust at $48,651.02, resulting in a total beneficial interest of Wartburg in the decedent's estate of the value of $49,151.02 and a tax of $2,207.55.
The tax was calculated upon the determination of the Division of Taxation that the beneficiary, Wartburg, was an orphan asylum and that the testamentary transfers should be taxed at the rate of 5% on that portion of the beneficial interest acquired by the beneficiary in excess of $5,000 as prescribed by R.S. 54:34-2b.
The executor of the decedent and Wartburg, the beneficiary, impugn the legal and factual propriety of the tax so assessed with the insistence that Wartburg was and is an educational institution within the import of R.S. 54:34-4d as amended and therefore exempt from all transfer inheritance taxation. The contrariety of opinion between the Division and the appellants in this respect projects the sole question before us for decision.
In directing our attention initially to the amplitude of the factual foundation supporting the assessment, the generalities contained in the information supplied by the appellants are immediately noticeable. The opportunities afforded the appellants to introduce oral testimony descriptive of the principal and primary functions of the institution were not accepted. Our source of information from which to ascertain the superior and predominant aim, object, and intended purpose of Wartburg is necessarily confined to the contents of its corporate charter, of a fund-soliciting brochure, and of the affidavits of the appellants' counsel to which references will be presently made.
*127 It must be acknowledged that the burden of proving "free from fair doubt" that the transfers are exempt from taxation under the terms of the statute devolves upon the appellants and that a statutory grant of exemption from taxation should not be construed to extend in scope beyond the ordinary import and signification of the terms of the concession. Sisters of Charity v. Cory, 73 N.J.L. 699 (E. & A. 1907); Carteret Academy v. State Board, etc., 102 N.J.L. 525 (Sup. Ct. 1926), affirmed 104 N.J.L. 165 (E. & A. 1927); City of Trenton v. State Board of Tax Appeals, 127 N.J.L. 105 (Sup. Ct. 1941), affirmed sub nom. City of Trenton v. Rider College, 128 N.J.L. 320 (E. & A. 1942); College of Paterson v. State Board of Tax Appeals, 131 N.J.L. 57 (Sup. Ct. 1943); Trustees of Rutgers University v. Piscataway Tp., 134 N.J.L. 85 (Sup. Ct. 1946); Borough of Edgewater v. Connoil Corp., 4 N.J. Super. 338 (App. Div. 1949).
Two relatively recent opinions are informative of the course and destination of our inquiry in a case of this nature. The citations are Tappan Washington Memorial Corp. v. Margetts, 9 N.J. Super. 212 (App. Div. 1950), and Board of National Missions v. Neeld, 9 N.J. 349 (1952). Both of those decisions express the conviction that the Legislature intended to establish a distinction between the classifications of the institutions designated in R.S. 54:34-2(b) from those individualized in R.S. 54:34-4(d).
And so, more specifically recognized, our task in the consideration of the present appeal is to determine whether the appellants submitted evidence which proved free from a fair doubt that the beneficiary was at the time of the testamentary transfers an educational institution comprehended by the reasonably interpreted import of R.S. 54:34-4d. Our Supreme Court has declared that in order that a transferee may successfully claim a complete exemption under the cited section of the statute as an educational institution, it must be made to appear that the primary and dominant object of the organization is educational. It is not sufficient *128 to reveal that an educative function is incidentally pursued in furtherance of another more predominant purpose. Board of National Missions v. Neeld, supra. Vide, also, In re DePeyster's Estate, 210 N.Y. 216, 104 N.E. 714 (Ct. App. 1914); Ancient and Accepted Scottish Rite of Freemasonry v. Board of County Com'rs., 122 Neb. 587, 241 N.W. 93, 100, 81 A.L.R. 1166 (Sup. Ct. 1932).
With this guidance we explore the evidence to ascertain the foremost interest and concern of Wartburg, the principal mission to which it devotes its service, and the paramount achievement it strives to attain.
We observe that the organization known as the Deaconess Institution of the Evangelical Church was incorporated by an act of the legislature of the State of New York in 1869. We quote:
"At first only Civil War orphans were cared for; then help was extended to children who had lost one of their parents (half orphans). And, finally, a helping hand was given also to children whose parents had failed in their home and family responsibilities."
In 1884 the charter was legislatively amended. The corporate name was changed to Wartburg Orphans' Farm School of the Evangelical Lutheran Church, which title it has since retained. Conspicuous in the amendatory act is the recital:
"Whereas William A. Passavant and the late Peter Moller by the aid of sundry charitable persons have established an orphan institution known as the Wartburg Orphans Farm School of the Evangelical Lutheran Church, which is located near Mount Vernon, in the county of Westchester, State of New York, in order that destitute orphan children might enjoy the benefit of a Christian home and training, * * *." (Italics supplied.)
The amended charter empowers the institution to provide "all necessary accommodations and conveniences requisite for the reception and care of orphans, patients and other inmates * * *."
True, the corporate authority to conduct a school may be conferred by the following paragraph of the charter:
*129 "The object of the said corporation shall be the relief, maintenance and care of orphans and half orphans, the establishment and maintenance of industrial schools, the education of youth, and the exercise of mercy to the sick, the unfortunate and the destitute."
Yet the supremacy of the corporate purpose to care for orphan children becomes manifest upon reading the amended charter of 1884 in its entirety. Note particularly section 12 thereof.
Our attention then centers upon the brochure published by the institution under the title Wartburg at Work. Its tone and diction display in general the nature and character of the commendable service performed by the institution. It assures us in retrospection that from the institution's "very beginning" it "has been dedicated to the ministry of loving service to needy children."
A few excerpts from the brochure are so expressive and informative that they may well be quoted:
"* * * Institutions geared only to the temporary needs of the past are no more. However, human need remains the same, and the latest means and service methods must be employed to meet it. And the motive of our service remains the same: Christian compassion giving new meaning and purpose to the lives of needy persons.

* * * * * * * *
A family home cannot be replaced. It is the normal, fertile soil in which a child takes its roots and derives its strength for normal growth. But when cruel circumstances and blows of misfortune disrupt the normal growth of life, the best possible substitute must be found that will reasonably guarantee its continuance. For children in distress the private foster home and the home for groups of children have provided the answer to their needs. Through them Christian helpfulness has expressed itself. While single children may often best be cared for in private homes, larger family groups are often best cared for in homes like the Wartburg, to keep the family bond intact. Hence, it is easy to understand why no less than 87 children have brothers or sisters here at the home. Thus, in a true sense, the Wartburg is a family home with family interests and aims.

* * * * * * * *
This question has often been asked. The answer is simple. If the Wartburg is known to people in distress, they usually apply directly for help. Otherwise they are referred to us either by their pastor or a welfare agency. Because they are in need of much personal attention, very small children are accepted only if they have older brothers or sisters at the home.
*130 The length of a child's stay at the Wartburg depends entirely upon family circumstances. If a father or mother re-marries, the children are expected to become a part of the new family circle that they may again enjoy the blessings of family life. * * *

* * * * * * * *
During the last year 151 children were given care at the Wartburg. Of this number 28 children were placed. The parents of nine children remarried and established homes. Three finished their high school education and are now in gainful employment. One attends college. We have received excellent reports concerning all of them.

* * * * * * * *
Unlike most welfare agencies the Wartburg does not receive any public subsidy or support from any official church body, but is supported solely by sympathetic friends who have the needy on their hearts. * * *"
An orphan asylum or orphanage is essentially a refuge for orphan children, intrinsically a home for the care, protection, and supervision of dependent, neglected, and often indigent, children. Vide, In re Pearsons' Estate, 113 Cal. 577, 45 P. 849, 1062 (Sup. Ct. 1896).
Doubtless the moral, religious, and intellectual well-being of the orphan children becomes a component of concern in the exercise of the care and custodial supervision bestowed upon the children by the substituted institutional home, but viewed in the order of importance the preservation of the abandoned child's existence is assuredly the primary object of an orphanage. Clearly the supreme intent and purpose of such an organization is to provide the child with the requirements of an abode assimilating as nearly as possible the environmental influences of the family home. We recognize those distinguishable characteristics.
We conclude from the pertinent information transmitted to us by the record in the present appeal that Wartburg was at the time of the testamentary transfers and probably continues to be primarily an orphanage, an orphan asylum within the designation of our applicable statutory law, and not within the contemplated category of educational institutions.
The assessment under review is accordingly affirmed.