## THE LOATS FEMALE ORPHAN ASYLUM OF FREDERICK CITY *v.* ESSOM et al.

[No. 186, September Term, 1958.]

12

14

*Decided May 7, 1959.*

*Motion for rehearing, filed June 5, 1959, denied June 25, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Robert E. Clapp, Jr.,* for appellant.

*D. Engene Walsh* and *Leroy W. Preston,* with whom were *Harvey C. Bickel, Edwin F. Nikirk* and *William M. Storm* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree declaring that the real estate conveyed in 1883, to the Loats Female Orphan Asylum of Frederick City, is now vested in the heirs at law of John Loats, deceased, named in the decree and in the proportions therein set forth. The proceeding for a declaratory decree was instituted to permit the appellant corporation to sell and convey a good and marketable title to the real estate in question, free and clear of the claims of the heirs or devisees, known or unknown, of John Loats and Louis Loats, and praying an order of publication against unknown heirs. Some 44 of the heirs appeared and answered the bill. After appeal to this Court, a motion to remand was filed on behalf of some

20 other non-resident persons, claiming to be heirs of John Loats, alleging that they had not theretofore had notice or knowledge of the proceeding, and desiring to prove their descent and share in the distribution. We deferred ruling on the motion at that time, and in the view we take of the case we think the motion must be denied. The court below had jurisdiction of the subject matter and the then unknown heirs had due notice by virtue of the publication. If we assume that the motion might properly have been granted, or that the rights of these persons to intervene and claim their shares might have been preserved for future determination, it would be idle to so order when our holding on the merits is that none of the heirs are entitled to the property in question.

On November 21, 1876, John Loats executed a will in which he devised the real estate in question to his niece, Annie Josephine Sifford, for her life or until she should marry. By item XVIII, further disposition was made of the property upon the happening of either of those events. The provision is both lengthy and complex. The first clause, in the nature of a preamble, recites: ["Whereas I am desirous of organizing and founding a suitable and proper Asylum for destitute and deserving female orphan children who have been thrown helpless and unfriended on the world, and who by the agency and through the assistance of such an Institution as I wish to establish, may be saved from want and protected from the snares of vice, and may be properly taught, educated and instructed and morally trained; and whereas I am desirous that the said Institution and the benefit I design it to confer shall be lasting and permanent; * * *."]

There follows a "request" that certain named persons, and their survivors, "within twenty years after my death" form a corporation to be styled the "Loats Female Orphan Asylum of Frederick City," with "full power to carry out the benevolent objects which I have in view and with power to have and to hold and by grant, devise or bequest to acquire and receive any real and personal property * * *." There follow specifications as to the duties of the directors, the character and qualifications of the girls to be admitted, and the mem-

bership of the Board of Directors, which need not be quoted in detail.

The will then set out three alternative devises in this language: "To carry out and give effect to these intentions, (1) I will devise and give, after the death of the said Annie * * * or upon her marriage whichever shall first happen, unto the said Loats Female Orphan Asylum on its becoming incorporated within the time hereinbefore prescribed, the said real estate and property hereinbefore * * * devised and given to the said Annie * * * for the term of her natural life or until she should marry, to have and to hold the same in fee simple for the objects hereinbefore designated, using the said house for the Asylum and the said farm to support and maintain the same. (2) Should, however, there be any legal impediment (arising from the non incorporation of said Asylum at the time of my death or afterwards, or from any other cause whatever) preventing the said real estate and property * * * from vesting in said Asylum at the time the said real estate and property are declared to vest therein; then I will, give and devise the said real estate and property to the said Rev. Dr. George Diehl, Charles E. Trail, William S. Miller, John C. Hardt, Louis M. Nixdorff, Samuel Appold, and Mr. [Charles W.] Humerickhouse [being the same persons requested to form the corporation] and the survivor of them in trust, however, to hold and manage the same and to invest the yearly incomes arising therefrom until an act of incorporation or a charter shall, within twenty years after the time of my death, be procured * * *; and then upon further trust * * * to convey the said real estate and property to the said Asylum in fee simple for the purposes hereinbefore specified. And I do hereby declare it to be my will and intention that the said real estate and property * * * should be at all events applied to the uses and purposes above set forth, and that it is my desire that All Courts of Law and equity will so construe this my said will as to have the said estate and property appropriated to the above purposes and uses, and that the same should in no case, for want of legal form or otherwise, be so construed as that my relations or any other persons, should heir, inherit, possess or enjoy the said real estate and property

except in the manner and for the uses above herein specified. (3) Should the devise and gift to the said Asylum fail to take effect from any cause, and should the said devise and gift to the said trustees 'herein named or their successors fail to vest from any cause notwithstanding the liberal spirit of construction which I have invoked to sustain the said devise and gift, then, that there may be no intestacy, I give and devise said real estate and property after the expiration of twenty years from the time of the death of said Annie * * * or from and after the expiration of twenty years from the time of her marriage, unto such children of my brother Louis Loats as may be living at that time and if none of his children be then living to the descendants of such of them as have or shall have survived the said Louis, in fee simple." (Numerals in parentheses supplied.)

John Loats died on March 24, 1879, and his will was probated on April 10, 1879. On July 13, 1881, Annie Sifford married. On July 25, 1881, the Asylum was incorporated with the powers and for the purposes stated in the will, and began to operate the home. On September 5, 1883, the "trustees" named in the second alternative devise executed, and later recorded, a deed of the real estate to the corporation. For some years the Asylum admitted only "orphan" girls, in the strict sense of the word, but about twenty-five years ago it began to also admit girls from "broken homes." By June, 1955, it became apparent that the continued operation of the Asylum was impractical, for various reasons, and the Asylum was closed in July, 1956. The present suit was filed on October 28, 1957, to facilitate a sale of the property.

The appellant contends: (1) The alternate devises to the corporation were void and a right of entry accrued either to the heirs of the testator, or to the descendants of Louis under the third alternate devise, upon the termination of Annie's estate. But it claims title by adverse possession, free and clear of any conditions, from the time of the void conveyance to it after its incorporation. (2) If the devises to it were valid, but the estate was conditioned upon compliance with the terms of the will, the condition was broken more than 25 years before the present suit and adverse possession ran from

that time. (3) If the devises were valid, the conditions stated in the will did not make the fee determinable, either by reverter or gift over. (4) In any event, there was no showing that the appellant proposed such a radical departure from the conditions stated in the will as to call for a forfeiture.

The appellees contend: (1) The appellant is estopped to assert the invalidity of the devises under which it claimed title, and to assert title by adverse possession. (2) For the same reason it cannot assert title by adverse possession upon condition broken. (3) The corporation took title under valid executory devises, but subject to a condition subsequent. Upon breach of the condition, there was a reverter to the testator's heirs. (4) The closing of the Asylum vested title in the heirs of the testator by operation of law.

It is not disputed that the three devises are in the alternative. The first was to the corporation directly, the second to it by conveyance from the trustees, only if the first devise was invalid, and the third to the descendants of Louis, only if the first and second devises failed, and only to prevent an intestacy.

A primary question is presented as to the nature and validity of the devises to the Asylum. It has been held in a long line of cases in this State, beginning with *Dashiell v. Attorney General,* 5 Harris & J. 392; 6 Harris & J. 1, that a devise for charitable uses cannot be sustained or enforced because of the indefiniteness of the beneficiaries, whether the devise is directly to the indefinite objects, or to trustees for their benefit. This holding was based upon the view that the English Statute, 43 Eliz., Ch. 4, respecting charitable uses, was never adopted in Maryland, and that courts of chancery possessed no powers, respecting such uses, independently of that statute. Cf. *Dumfries v. Abercrombie,* 46 Md. 172. As pointed out by Judge Markell in *Fletcher v. Safe Deposit & Trust Co.,* 193 Md. 400, 416, this Court followed the Supreme Court's view, expressed in *Baptist Association v. Hart's Ex'rs,* 17 U. S. 1 (4 Wheat.), that charitable trusts originated under the Statute of Elizabeth. The historical error was corrected by the Supreme Court in *Vidal, et al. v. Girard's Executors,* 43 U. S. 127 (2 How.) but this Court persisted in it.

The charitable trust statute, Code (1957), Art. 16, sec. 195 (Acts 1931, ch. 453) and the *cy pres* statute, Code (1957), Art. 16, sec. 196 (Acts 1945, ch. 727) have been said to be not applicable retroactively. *Fletcher v. Safe Deposit & Trust Co., supra* (p. 410). The will in the instant case became effective at the testator's death in 1879.

It is also well settled that a devise *in praesenti* to a corporation not in existence at the time the will takes effect is void because there is no devisee in being capable of taking it, and the estate created must vest at that time or not at all. *State, Use of M. E. Church v. Warren,* 28 Md. 338, 354; *Yingling v. Miller,* 77 Md. 104, 108. By chapter 249, Acts of 1888, the legislature added sec. 305A to Article 93, designed to partially remedy this situation, by providing that a devise to a corporation directed to be formed would be valid and enforceable in equity, if the corporation was formed within one year from the probate of the will. By chapter 335, Acts of 1924, the time for formation was extended to one year after the termination of an intervening life estate. Code (1957), Art. 93, sec. 357. It would seem that the statute is inapplicable to wills that became effective prior to its passage. Cf. *Chase v. Stockett,* 72 Md. 235, 238, and *Second Nat. Bank v. Bank,* 171 Md. 547, 552. Certainly, the amendment of 1924 could not save a transaction completed long prior to its enactment.

We think, however, that a distinction may be drawn between a devise *in praesenti,* and an executory devise. In the instant case it is clear that the taking was to be postponed until after the determinable life estate in the niece, Annie. The first alternative gift over was not to the Asylum immediately upon the termination of the preceding estate, but upon its becoming incorporated within twenty years after the testator's death. Its interest was not a remainder, but an executory interest to take effect upon the happening of a future contingency. *Starr v. Starr M. P. Church,* 112 Md. 171, 181; Miller, *Construction of Wills in Maryland,* § 239; 1 Simes & Smith, *Future Interests* (2d Ed.), § 221; 2 Jarman, *Wills* (8th Ed.), p. 1420; Thompson, *Wills* (3d Ed.), § 357. It is well settled that a person to whom an executory devise

or bequest is made need not be *in esse* at the time the will becomes effective. Miller, *supra,* § 239, note 15. Cf. *Barnum v. Barnum,* 42 Md. 251, 312; *Pennington v. Pennington,* 70 Md. 418, 439. See also *Inglis v. The Trustees of The Sailor's Snug Harbour,* 28 U. S. 99, 115, 144 (3 Pet.); *Ould v. Washington Hospital, Etc.,* 95 U. S. 303, 313, 315 (5 Otto.); Miller, *supra,* § 241, p. 691; Thompson, *supra,* p. 539; 2 Tiffany, *Real Property* (3d Ed.), § 360. The common law rule that a devise *in praesenti* must fail because the vesting cannot be held *in vacuo* is not applied because it is reasoned that in the case of an executory devise or bequest the title devolves conditionally upon the heirs, or passes conditionally into the residue, until the objects come into being. In the instant case there is no problem as to the rule against perpetuities, because of the time limitation.

On the point of intention, it would appear that the testator contemplated that the property would devolve upon his heirs prior to the incorporation, subject to divestment if the condition was met, when he declared that his will should not be construed so that his relations or others should inherit, "except in the manner and for the uses above herein specified." Identical language, to that in the passage hereinbefore quoted in full from the will, was construed in the *Inglis* case, *supra,* pp. 105 and 113, to mean that where the estate devolves upon the heirs to await the happening of a contingency, the heirs should "possess and enjoy the property, * * * charged with the trust." (p. 119) The opinion makes it clear that the word "trust" was not used as a word of art, but to describe the effect of the rule of law that the heirs take the property charged with the executory interest, and that such interest may not be defeated or destroyed by them. Cf. Thompson, *supra,* p. 540; Simes & Smith, *supra,* § 231. The testator restated the rule approved in the *Inglis* case. From this and other provisions of the will, his intent to make an executory devise can hardly be disputed.

The appellant argues, and the chancellor assumed, that since the parties adopted, in effect, the second method of transfer to the Asylum, by conveyance from the trustees, the title of the Asylum was derived in that manner. But an

executory devise vests automatically upon the happening of the event, and no entry or election is necessary. Simes & Smith, *supra,* § 230. Thus, the property vested in the corporation on the date it was formed, July 25, 1881, and there was no interest in the trustees under the second alternative, which they could convey in the purported deed of September 5, 1883. We do not reach the question whether the second alternative devise was a valid one.

The *Inglis* case is particularly important, because the Supreme Court dealt with a devise to a corporation to be formed for charitable uses, and sustained it as an executory devise. The court distinguished the *Hart* case, which this Court had followed in the *Dashiell* case, on the ground that there the devise was *in praesenti,* to take effect immediately upon the death of the testator, rather than an executory bequest over to the association if it should become incorporated. In *Church Extens'n M. E. Ch. v. Smith,* 56 Md. 362, 393, this Court noted that in the *Inglis* case the "bequests were supported as executory devises," but the question in the *Smith* case involved only the matter of legislative sanction, the corporations being already in existence. Since we hold that the corporation in the instant case took title by way of an executory devise, it is unnecessary to discuss the contention that it acquired title by possession adverse to the right of entry by the heirs from the time of its incorporation, or the purported conveyance to it, under the principle stated in *Salem Church v. Numsen,* 191 Md. 43, 49. Cf. *Sullivan v. Novak,* 128 Md. 697.

This Court has held in a long line of cases that a conveyance to a corporation for its corporate purposes is not invalid for indefiniteness, even though its purposes are charitable, the particular beneficiaries uncertain, and the duration indefinite. See Miller, *supra,* § 164; note 1 Md. L. Rev. 105, 113; *Gray v. Harriet Lane Home,* 192 Md. 251, 263, and cases cited; see also *Art Students League of New York v. Hinkley,* 31 F. 2d 469 (D. C., Md.); aff'd 37 F. 2d 225 (C.C.A., 4th Cir.), *cert. den.* 281 U.S. 733. Such a conveyance is construed as an absolute gift, sometimes subject to a condition subsequent. *Gray v. Harriet Lane Home, supra* (p. 264). In the *Gray*

case, the bequest to the Home For Invalid Children was for the use and benefit of two wards, known as "The Contagious Units," in the institution, one for the treatment of diphtheria and the other for the treatment of scarlet fever. With the passage of time, and changes in medical knowledge and practice, the use of these wards for the treatment of these diseases was wholly discontinued and they were used instead for an outpatient dispensary and for the study of noncontagious cases, respectively. We held that a condition subsequent should not be implied, so as to work a forfeiture, since there was no gift over or intention shown that the grant should be void for breach of condition. The Court distinguished *Baltimore v. Peabody Institute,* 175 Md. 186. A somewhat different approach was taken in *Keyser v. Calvary Brethren Church,* 192 Md. 520. There a bequest to a corporation for the building of a new church contained a limitation that if the church was not built within five years, "then this returns to my estate." Because of war restrictions, building was not commenced until after five years from the testatrix's death. We held that the bequest was not forfeited, even though the condition subsequent was not strictly complied with, both as a matter of reasonable construction of the will, and because of the impossibility or impracticability of performance within the time stated. See note on this case in 11 Md. L. Rev. 187, 227. In *Fletcher v. Safe Deposit & Trust Co., supra* (193 Md. 400, 420), Judge Markell, for the Court, said: "Perhaps without resort to any *cy pres* doctrine, the same result might be reached by a 'liberal construction' of the will. *Bogert, Trusts and Trustees,* § 433 [p. 333]. Cf. *Gray v. Harriet Lane Home for Invalid Children, supra.*" See also *McMahon v. St. Paul's Ref. Church,* 196 Md. 125, 132; *Sands v. Church, Etc.,* 181 Md. 536, 542; *Columbia Bldg. Co. v. Cemetery,* 155 Md. 221, 229.

The will in the instant case did not expressly provide for any right of entry, reverter or gift over, for breach of condition.[1] Whether a resulting trust could be implied, upon a complete failure or abandonment of the purposes of the gift,

---

1. The parties and the Chancellor seem to have assumed that

is a question upon which the cases are not wholly in accord. Bogert, *Trusts and Trustees,* § 418; Cf. *Sands v. Church, etc., supra* (p. 543). But that is not the situation here. The directors of the corporation have not disavowed their obligation to carry out the purposes of the will, so far as practicable. It was shown that none of the twenty-one institutions that presently give care to children in Maryland, deal exclusively with "orphans," and only 3% of all the children in the United States, in care out of their own homes, are orphans. It is the current philosophy that foster homes are preferable to institutions for normal child care, and that institutions should be reserved for children with "special problems." Fewer children are now left without either parent living, due to a decrease in mortality rates. The Loats Asylum had experienced difficulty in obtaining children in that category, and in employing personnel to comply with modern standards. This situation is by no means unique. See *County Bank and Trust Company v. Neeld,* 108 A. 2d 28, 30 (N. J.).

The appellees do not dispute the factors that preclude the continued operation of the Home but contend that when the Home was closed, the property reverted. We think, however, that this was a result not intended or desired by the testator. His broad purpose was to aid "destitute and deserving female orphan children who have been thrown helpless and unfriended on the world * * * *by the agency and through the assistance of such an Institution * * *.*" The corporation was to hold the property for the *"objects"* designated. He desired the "Institution *and the benefit I design it to confer"* to be "lasting and permanent." We think the operation of the institution in the exact manner described was only incidental to the main purposes, and a means to an end. Cf. *Gray v. Harriet Lane Home, supra.* See also *County Bank and Trust Company v. Neeld, supra,* and *In re Milne's Succession,* 89 So. 2d 281, 289 (La.). The change is dic-

---

the Asylum took the estate limited by a "possibility of reverter." Under our view of the case, it has been unnecessary to decide whether this interpretation was correct, or whether there was a right of entry for condition broken.

tated by altered circumstances and new theories of treatment. It is not a departure in principle from the objects designated. The sale of the real estate is necessary to the continued fulfillment of these objects, within the purview of the testator's primary purpose to aid destitute and deserving female orphan children. We think there was no right of entry or reverter and no resulting trust under the circumstances.

Because this action was brought for the benefit of the appellant, and because the appellees have been participants only insofar as they have been required to assert their claims by the commencement of this proceeding by the appellant, and by its appeal, we think that the costs should be paid by the Asylum. Cf. Rule 882 a.

> *Decree reversed and case remanded for the passage of a decree in accordance with the views here expressed, costs to be paid by the appellant.*