BALDWIN, EXECUTRIX, Etc., ET AL. *v.* GRYMES

[No. 1,  September  Term,  1963.]

*Decided October 15, 1963.*

*Motion for rehearing filed November 14, 1963, denied December 3, 1963.*

The cause was argued before BRUNE, C. J., and HENDERSON, PRESCOTT, HORNEY and MARBURY, JJ.

*Paul F. Due,* with whom were *George D. Solter* and *Due, Nickerson, Whiteford & Taylor* on the brief, for appellants.

*Ridgely P. Melvin, Jr.,* with whom were *McWilliams & Melvin* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal involves a question as to whether the money in controversy was property owned by the resident of a home for the aged at the time of her admission to the home or was property acquired by her after she was admitted.

Patience Johnson, having executed an admission contract and, as an integral part thereof, a last will and testament, entered the Aged Women's and Aged Men's Homes, as a resident therein, on June 3, 1954. She remained at the Home until her death on June 8, 1956. She was survived by a nephew, Herbert L. Grymes, as next of kin and only heir-at-law.

By the terms of the contract, and as a part of the consideration for her admission and care at the Home, the resident, besides an admission fee, agreed to pay over and assign to the Home all the property she had at the time of her admission, with the exception of $100. She further agreed that "in the event of proof of ownership of other property which had not been disclosed at the time of admission * * * such property [should be] the property of the Home." Under the last will and testament, the Home was named as the sole legatee and devisee of all property she then owned or thereafter acquired.

Patience Johnson was a widow. Her husband, Zachariah A. Johnson, died in January of 1954. He left a last will and testament in which his wife was designated as his sole legatee and devisee and was named as executrix. But the will was not probated until after it was ascertained that a sum of money was payable to his estate. At that time, the executrix renounced and an administrator *c.t.a.* was appointed to administer the estate.

Ten years before his death, Zachariah Johnson found a tract of land in Anne Arundel County which could be purchased for $1500. Instead of buying the tract himself, he told Howard Pumphrey and his brother Thomas (since deceased) of the bargain, and the three orally agreed that the Pumphreys would buy and pay for the tract, and, on its future sale, the finder of the bargain would be paid one-third of the net profits. No sale was made for more than a decade, but when the State Roads Commission acquired a part of the tract for a right of way, the surviving brother paid to the administrator *c.t.a.* of the estate

of Zachariah Johnson the share of the net profits which was payable to his estate. Thereafter the sum of $2667.94 was distributed to the widow, which, pursuant to the terms of the admission contract, was transferred to the Home. Subsequent to the death of the widow, another part of the tract of land was sold and an additional sum of money was paid into the estate of Zachariah Johnson. In due course, the sum of $7749.40 was distributed to the executrix of the will of Patience Johnson. It is these two sums of money which are in controversy in this case.

The lower court awarded both sums to the nephew as the sole heir-at-law of Patience Johnson on the theory that they were "after acquired property," and the executrix of her will (who was also the treasurer of the Home) and the Home appealed. The appellants contend that the money received by the widow and her estate was property she owned at the time of her admission to the Home. On the other hand, the appellee claims that the money was property she acquired after she had been admitted thereto.

It is clear that a provision in an admission contract whereby an applicant assigns to a home for the aged the property he owned at the time of admission is valid. *German Aged People's Home v. Hammerbacker,* 64 Md. 595, 3 Atl. 678 (1886). But it has been held that a contract requiring an assignment of all property acquired after admission would be void on the ground of public policy. *Aged Men's Home v. Pierce,* 100 Md. 520, 60 Atl. 277 (1905). It would seem, however, that the inclusion of such a provision in an admission contract would not affect the validity of the instrument as to property owned at the time of admission where, as here, the insertion of the "after acquired property" clause was not so interwoven into the terms of the contract as to be inseverable from it. *Nicholson v. Ellis,* 110 Md. 322, 73 Atl. 17 (1909).

The only question, as the appellee concedes, is whether the money in dispute was "after acquired property" so as not to have been assigned to the Home under the admission contract. We are not called upon in this case to consider the effect of the resident's will on the devolution of the property.

The circumstances in this case obviously present a far different situation from that presented in the *Pierce* case on which the appellee primarily relies to support his claim that the money in dispute was after-acquired property. There a son of the inmate of a home died, without leaving a widow or descendants, *after* his father had entered the home, and the father of the intestate became entitled to the balance that remained for distribution. But, here, the husband of the resident of the Home died *before* his widow entered the Home, possessed of a transferrable (though conditional) right to receive a sum of money in the future, which, by the terms of his will, he bequeathed to his wife. The record is clear that the payment of the money to the administrator *c.t.a.* by Howard Pumphrey was made in satisfaction of an obligation which he honorably recognized.

It seems to us that the part Zachariah Johnson played in the transaction which culminated in his estate receiving these sums of money was closely akin to that of a finder. A "finder," it has been said, is one who finds, interests, introduces and brings together parties for a deal, even though he has no part in negotiating the terms of the transaction. See *Ames v. Ideal Cement Co.,* 235 N. Y. S. 2d 622 (Sup.Ct. 1962) ; *Kuffler v. List,* 144 F. Supp. 776 (D.C.N.Y. 1956), and cases cited therein. As compensation for his services, a finder customarily receives a commission or finder's fee, frequently based on a prior oral agreement with the party for whom he did the finding. *Cray, McFawn & Co. v. Hegarty, Conroy & Co.,* 27 F. Supp. 93 (D.C.N.Y. 1939). Notwithstanding the fact that the subject matter of the transaction might involve real estate, most jurisdictions enforce an oral finders agreement for compensation where it is clear that the finder was not actually a real estate broker. See *Bittner v. American-Marietta Co.,* 162 F. Supp. 486 (D.C.Ill. 1958) ; *P. W. Chapman & Co. v. Cornelius,* 39 F. 2d 555 (C.A. 2nd 1930) ; *Howard v. Heinig,* 210 N. W. 414 (Wis. 1926).

We think the agreement between the purchasers and the finder was a binding contract based on a valid consideration. Even if the contract were subject to challenge for failure to comply with the statute of frauds, only the Pumphreys or those in privity with them could have done so, and they chose not

to. The statute of frauds affects only the remedy and not the validity of a contract. *Equitable Gaslight Co. v. Baltimore Coal Tar Co.,* 63 Md. 285 (1885). Accord: *Grauel v. Rohe,* 185 Md. 121, 43 A. 2d 201 (1945); *Forsyth v. Brillhart,* 216 Md. 437, 140 A. 2d 904 (1958). The information supplied by the finder to the purchasers was a sufficient consideration to support the agreement to pay the finder a share of the net profits. *Rogich v. Dressel,* 278 P. 2d 367, 373 (Wash. 1954).

Although the enforceability of the agreement was contingent upon the happening of a future event, *i.e.,* the sale of the tract of land at a net profit, we conclude that the expectant right of future enforcement was an item of personal property which could be disposed of by will. See Code (1957), Art. 93, § 346. Since this "right" arose at the time of the making of the agreement and existed at the husband's death, it passed to his wife under his will. Even though the will was not immediately probated, it took effect as of the date of the testator's death on January 19, 1954, and operated on his property at that time. *Loats Asylum v. Essom,* 220 Md. 11, 150 A. 2d 742 (1959); *Schildt v. Schildt,* 201 Md. 10, 92 A. 2d 367 (1952). Since Patience Johnson owned the "right" when she entered the home on June 3, 1954, it follows that her assignment of it, along with other property she then owned, was valid. See *Keys v. Keys,* 148 Md. 397, 400, 129 Atl. 504 (1925), where it was said that " 'chancery will give effect to the assignment of a mere expectancy or possibility, not as a grant, but as a contract entitling the assignee to a specific performance, as soon as the assignor has acquired the power to perform it.' "

We hold that the money in dispute was not after-acquired property, but was property owned by Patience Johnson at the time of her admission to the Home.

> *Decree reversed and case remanded for the entry of a decree in conformity with this opinion; the appellee to pay the costs.*