571 A.2d 252
**James W. RESPESS**
**v.**
**CITY OF FREDERICK, et al.**
**No. 1197, Sept. Term, 1989.**
Court of Special Appeals of Maryland.
March 28, 1990.

254

Ralph Gordon (Albert O. Cornelison, M. Bridget Bielinski and Gordon, Simmons & Cornelison, on the brief), Frederick, for appellant.

W. Milnor Roberts, Frederick, for appellee, City of Frederick.

Thomas E. Lynch, III (Robert S. Brennen, Carol A. O'Day and Miles & Stockbridge, on the brief), Baltimore, for appellee, Baseball & Sports Associates, Inc.

Argued before MOYLAN, BISHOP and GARRITY, JJ.

BISHOP, Judge.

Seeking to halt the City of Frederick's construction and operation of a stadium, appellant James W. Respess (Respess)[1] filed suit in the Circuit Court for Frederick County against the City of Frederick and Baseball and Sports Associates, Inc., appellees. The complaint as amended sought relief under six counts. Count I alleged that the land where the stadium was to be built was burdened by a restrictive covenant. Count II alleged that the erection of a stadium at this location violated the local zoning ordinance. Count III alleged breach of contract. Count IV alleged that the City's actions were *ultra vires*. Count V alleged nuisance and Count VI requested a declaratory judgment. In conjunction with the amended complaint, Respess filed a motion for summary judgment, or alternatively for an interlocutory injunction. Both the City and Baseball and Sports opposed these motions. Baseball and Sports filed a motion to dismiss the amended complaint.

---

1. Named plaintiffs in the circuit court action also included: the Chesapeake Conference of Seventh Day Adventists, a body corporate; the Frederick Seventh Day Adventist Church, an unincorporated body; and Robert and Donna Bateman as next friends and guardians of Erica N. Bateman. Respess alone appeals the decision of the circuit court.

The Circuit Court for Frederick County (Stepler, J.) [2] held a hearing on these motions and subsequently dismissed Counts I through V of the amended complaint and granted summary judgment against Respess on the final count (VI). Appellant Respess alone appeals this judgment.

## ISSUES

Appellant asks this Court:

I. Whether the circuit court erred when it dismissed appellant's contention that the construction of the stadium violated the City Zoning Ordinance on the ground that he failed to first exhaust administrative remedies.

II. Whether the City is exempt from the City Zoning Ordinance.

III. Whether the circuit court properly dismissed appellant's challenge to the construction of a stadium on the basis that the land is burdened by a charitable trust.

IV. Whether appellant has standing as a taxpayer asserting a common law right to challenge an *ultra vires* governmental action.

V. Whether the Loats will imposes a charitable trust on the land that prohibits the construction or use of a stadium for professional baseball thereon.

VI. Whether the circuit court erred in failing to declare the rights of the parties.

## FACTS

When John Loats signed and sealed his last will and testament on November 21, 1876 his generous bequests sowed the seeds for more than a century of conflict and litigation. The will established the Loats Female Orphan Asylum of Frederick City [3] [Asylum] so that female orphan

---

2. We have quoted extensively from the well-reasoned and orderly oral opinion of the trial court.

3. The Asylum was incorporated on July 25, 1881.

children "may be saved from want and protected from the snares of vice and may be properly taught educated and instructed and morally trained...." Loats devised the real property to his niece for her life or until she should marry and then to the Asylum.[4]

A short synopsis of the consequences of this bequest is provided in *Loats Female Orphan Asylum of Frederick City v. Essom*, 220 Md. 11, 150 A.2d 742 (1959). Between 1881 and September 1956 the Asylum operated the home described in the will.

> On September 5, 1883, the "trustees" named in the second alternative devise executed, and later recorded, a deed of real estate to the corporation. For some years the Asylum admitted only "orphan" girls, in the strict sense of the word, but about twenty-five years ago it also began to admit girls from "broken homes." By June 1955, it became apparent that the continued operation of the Asylum was impractical, for various reasons and the Asylum was closed in July, 1956.

*Id.* at 17, 150 A.2d 742.

Seeking to sell its real estate, the Asylum sought a decree that it had good and marketable title. *Id.* at 14, 150 A.2d 742. That action eventually reached the Court of Appeals. The Court rejected claims by Loats' heirs that the property reverted to them, and held that the Asylum could convey real estate as the purposes of the trust were broader than the literal operation of an orphanage. *Id.* at 24, 150 A.2d 742.

After the orphanage closed, the Asylum donated the income from its property to the Children's Aid Society of Frederick. After the Society ceased to exist, the Asylum's Board promulgated a plan to fund student services programs, scholarships and the nursery center of the Evangelical Lutheran Church. Financial aid was no longer re-

---

**4.** *See also Loats Female Orphan Asylum of Frederick City v. Essom,* 220 Md. 11, 150 A.2d 742 (1959).

stricted to female orphans between the ages of three and eighteen. Contending that the Asylum had completely abandoned its intended purpose, the heirs of John Loats filed an action in equity seeking title to the property. *Florence L. Essom, et al. v. The Loats Female Orphanage Asylum of Frederick City, in the County of Frederick,* (Equity Action No. 22,813). The court disagreed with the heirs' assertions and concurring with the Court of Appeals' decision discussed *supra* found that the Board did not depart "from the objects designated by John Loats; and that the change is dictated by altered circumstances and new theories of treatment; that the broad purpose and intent of John Loats was to help children." Further, the court found that no implied condition subsequent could be read into the will. Even if the will created such a condition, the court reasoned, it could not be breached unless the Board totally abandoned its purposes.

The Asylum conveyed the Loats Asylum Farm property in fee simple to the City of Frederick on January 16, 1986. There is evidence in the record that the City made a commitment to the trustees that the park, renamed John Loats Park, would operate with a concentration on youth activities.

The City of Frederick has since operated the parcel as a park. Planning to construct a 4,200 seat baseball stadium on a portion of this land, the City entered into a lease agreement with Baseball and Sports Associates, Inc. Baseball and Sports owns and operates the Hagerstown Suns and the Frederick Keys. Both are minor league baseball teams affiliated with the Baltimore Orioles. The corporation leases the stadium from the city for the Keys' home games.

Appellant Respess is a taxpayer and member of the Frederick Seventh Day Adventist Church which is located adjacent to the property in issue. The church operates a school and sponsors after-school and weekend activities for children. In addition to religious services, it sponsors community activities such as Alcoholic Anonymous meetings.

## DISCUSSION

### I. *Failure to Exhaust Administrative Remedies*

Count II of Respess' amended complaint alleged that the construction of a stadium is in violation of the City of Frederick's Zoning Ordinance because a stadium is not a permissible use of land which is zoned R–1 and that the City is subject to and is in violation of its own zoning ordinance. The court dismissed this count because appellant failed to submit a complaint to the Zoning Administrator under the City Zoning Ordinance:

> [P]rimarily I feel that the plaintiffs have failed to exhaust their administrative remedies. It's under ordinance 21.05 that the zoning administrator shall promptly investigate any written complaint alleging violation of this ordinance and of course if they aren't satisfied they may then take their appeal.
>
> ... I think it should also be dismissed because the construction of a stadium is a governmental act and is not subject to the city zoning ordinance. I don't find it to be a proprietary act.

 Appellant contends that this ruling is incorrect because he interprets the City's Zoning Ordinance to permit direct appeal of a Planning Commission decision to the circuit court. We disagree.

The City of Frederick Zoning Ordinance contains its own enforcement procedures. Frederick, Md., Zoning Ordinance § 21.05 (ordinance). Any written complaint alleging a violation of the ordinance shall be investigated by a zoning administrator. *Id.* § 21.05(1). The zoning administrator's decision may be appealed to the Board of Zoning Appeals within thirty (30) days. *Id.* § 19.14(1). Individuals dissatisfied by the Board's review of the decision may then appeal to the circuit court. *Id.* § 19.09.

The integrity of any administrative scheme requires that the agency's remedies must first be exhausted before a party can pursue a civil appeal. Ordinarily, to exhaust administrative remedies a party must pursue the prescribed

administrative procedures and await the final outcome. Only after a final order may a party resort to the courts. *Comm'n on Human Relations v. Baltimore Gas & Electric Co.*, 296 Md. 46, 50–52, 459 A.2d 205 (1983). *Accord, Comm'n on Human Relations v. Mass Transit Auth.*, 294 Md. 225, 230–231, 449 A.2d 385 (1982); *Steuart Investment Co. v. Board of Comm'rs St. Mary's County*, 38 Md.App. 381, 390, 381 A.2d 1174 (1978); *Comm'rs of Cambridge v. Henry*, 263 Md. 370, 373–374, 283 A.2d 415 (1971).

In *Comm'rs of Cambridge v. Henry, supra,* several private citizens sought to enjoin the City of Cambridge's proposed construction of a waterfront park on the ground, *inter alia,* the construction violated a local zoning ordinance. Though the circuit court enjoined the construction, the Court reversed and dismissed the bill of complaint holding that the action should have been brought before the Board of Zoning Appeals instead of the circuit court. Observing that Cambridge's zoning ordinance provides that the issue be decided initially by the Board of Appeals with judicial review by the circuit court, Judge Henderson writing for the Court emphasized that:

> It is well established that a claimant ordinarily must seek to redress the wrong of which he complains by using the statutory procedure the legislature has established for that kind of case, if it is adequate and available, and that if he is unsuccessful and wishes aid from the courts, he must take judicial appeals in the manner the legislature has specified rather than by seeking to invoke the ordinary general jurisdiction of the courts.

*Id.* at 373–374, 283 A.2d 415 *quoting Agrarian, Inc. v. Zoning Inspector of Harford County*, 262 Md. 329, 332, 277 A.2d 591 (1970).

In the case *sub judice* Respess' complaint stated that the proposed commercial stadium is not within the uses permitted in an area zoned R–1. This allegation, that the use violates the area's zoning ordinance, should have been brought before the zoning administrator for determination. The zoning administrator shall consult the ordinance's table

of permitted uses and decide whether any proposed use not specifically included in the table is permissible. *See,* Ordinance § 402(1), (2).

Appellant submits that he properly brought the action before the circuit court pursuant to Ordinance § 6.10(2) which permits direct appeals from Planning Commission decisions on site plans to the circuit court. This provision is inapposite. Though appellant's complaint does allege that he objected to the proposed stadium before the Frederick County Planning Commission, the count as a whole complains that the zoning ordinance was violated by the City and not that the Planning Commission's approval of the site plan was improper. As Respess was aggrieved by what he perceived to be the City's violation of the zoning ordinance, that complaint should have been taken first before the zoning administrator.[5]

Because we affirm the court's dismissal of Count II, we will not address Respess' contention in that count that the City is barred by its own zoning ordinance from constructing a stadium for commercial uses in an R–1 zone.

## II. *Standing*

Respess alleged in Count I of the amended complaint that the property was still encumbered by the restriction of uses contained in the Loats will. Further, the use contemplated by the City of Frederick and Baseball and Sports was not in accordance with the charitable uses intended by the testator. Appellant requested an interlocutory and permanent injunction on the construction of the stadium and requested, *inter alia,* that the court impose a trust upon the property to carry out the charitable purposes. Similarly, Count IV alleged that the city's acts were *ultra vires* in part because they violated the trust.

---

**5.** During oral argument we were advised that appellant's zoning violation issue is now pending before the proper administrative authority.

The court found that Respess did not have standing to enforce the trust, and that the property was not impressed with a charitable trust:

Now, what, in essence, Count I is seeking to do is enforce a trust, and under Maryland law the only persons having standing to enforce a trust for charitable uses or purposes are the Maryland Attorney General or certain other interested persons. And this was defined in 1938 in the *Mayor and City Council of Baltimore v. Peabody Institute of Baltimore*,[6] and in that case the court said that only upon the instigation of the suit of The Attorney General or a person interested can this action lie.

Now, there's been a great deal of dispute as to what "interested person" is, whether it's the same thing as a person having an interest in land, and under Section 14–301 [7] and 101 [8] of the Estates & Trust Article of the

6. *Mayor and City Council of Baltimore v. Peabody Inst. of Baltimore,* 175 Md. 186, 200 A. 375 (1938).

7. Courts of equity have full jurisdiction to enforce trusts for charitable purposes upon suit of the state by the Attorney General or suit of any person having an interest in enforcement of the trust. Md. Estates and Trusts Code Ann. § 14–301(a) (1974).

8. **§ 1–101. Definitions.**
 (g) *"Interested person"* is:
 (1) A person named as executor in a will;
 (2) A person serving as personal representative after judicial or administrative probate;
 (3) A legatee in being, not fully paid, whether his interest is vested or contingent;
 (4) An heir even if the decedent dies testate, except that an heir of a testate decedent ceases to be an "interested person" when the register has given notice pursuant to § 2–210 or § 5–403(a).
 Interested person includes a person as above defined who is (a) a minor or other person under a disability, or (b) the judicially appointed guardian, committee, conservator or trustee for such person, if any, and if none, then the parent or other person having assumed responsibility for such person.
 An heir or legatee whose interest is contingent solely on whether some other heir or legatee survives the decedent by a stated period is an interested person but only after the other heir or legatee has died within that period. (1987, ch. 11, § 1.)
 Md.Est. & Trusts Code Ann. § 1–101(g) (1989 Suppl.).

Annotated Code, it defines what "interested persons" are. I don't think that any of the plaintiff's qualify as interested person under those definitions.

I don't think there's any question that Respess is not an interested person, and I think also that Maryland courts have generally followed the rule that a member of the general public, though a taxpayer, has no standing to maintain a suit to enforce a charitable trust or to prevent violations of a charitable trust.

 \* \* \* \* \* \*

And also, if we're assuming that there is a trust imposed, as I said, we have a necessary party that's not joined, and that's essentially the trustees of the Loats Foundation.

... [A]s to Count I, there's really no dispute as to the facts. And as a matter of law, I have found that the property is not impressed with a charitable trust.

■ Respess does not appeal the court's decision with regard to his standing to enforce the charitable trust. He asserts, however, that Count IV was improperly dismissed because he has standing as a taxpayer to challenge the *ultra vires* act of violating a charitable trust. Appellant contends that the allegations in the amended complaint that his taxes may increase to cover the additional financial burden imposed on the city by the building and maintenance of the stadium are sufficient to warrant standing.

In *Carroll Park Manor Community Ass'n., Inc. v. Board of County Comm'rs of Frederick County, Maryland,* 50 Md.App. 319, 437 A.2d 689 *cert. denied,* 292 Md. 595 (1981) four citizen taxpayers and an incorporated association of homeowners appealed an order that they had no standing to obtain a declaratory judgment and injunction to restrict Frederick County's use of a tract of land. This property had been obtained by the county in 1828 by a deed which limited use of the land "for the benefit of the poor of said county and to and for no other use, intent or purpose, whatsoever." The bill of complaint claimed that the terms

of the deed created a charitable trust which would be violated by the present and prospective uses of the tract. *Id.* 50 Md.App. at 320, 437 A.2d 689. This Court held that appellants did not seek to enforce a charitable trust but "as taxpayers and citizens of Frederick County to enjoin allegedly *ultra vires* acts by the County authorities." *Id.* The *ultra vires* acts cited by this Court were the "uses in violation of trust as established in the deed of the Monteville Tract to the County in 1828." *Id.* at 321, 437 A.2d 689. This Court went on to note that taxpayers seeking to invoke the aid of an equity court to challenge an *ultra vires* act by public officials must allege that the challenged action results in a pecuniary loss or increase in taxes to them as taxpayers.

We find *Carroll Park* to be controlling in this case and conclude that Respess' allegation that the proposed stadium may result in increased taxes is sufficient to warrant standing to challenge the County's use of the property as an *ultra vires* act. Our holding that Respess has standing to challenge use of the property as an *ultra vires* act will offer him little solace as we conclude *infra* that use of the property is not restricted by the will of John Loats.

### III. *Charitable Trust*

▇ Respess states that the primary purpose of the stadium which the city leases to Baseball and Sports is to create a profit. He alleges that a stadium located on land which had been conveyed by Loats to the Asylum violates the purpose of the charitable trust which limits use to the aid of the needy children of Frederick. Citing *Loats Female Orphan Asylum of Frederick City v. Essom*, 220 Md. 11, 150 A.2d 742 (1959), the court found that the property was not impressed with a charitable trust.

In *Loats*, the Loats Female Orphan Asylum of Frederick City instituted a declaratory decree to permit it to sell good and marketable title. The Court reviewed the will of John Loats (discussed *supra* ) and held that:

[t]he sale of the real estate is necessary to the continued fulfillment of these objects, within the purview of the testator's primary purpose to aid destitute and deserving female orphan children. We think there was no right of entry or reverter and no resulting trust under the circumstances.

*Id.* at 24, 150 A.2d 742. The case was remanded to the circuit court for a decree in accordance with that decision. *Id.* The circuit court ordered that no cloud remain on the title to the property:

It is thereupon, accordingly, and in obedience to the said mandate of the Court of Appeals, this 27th day of July, 1959, by the Circuit Court for Frederick County, sitting as a Court of Equity, ADJUDGED, ORDERED AND DECREED that any cloud upon the title of the Loats Female Orphan Asylum of Frederick City, in the County of Frederick, a body corporate of the State of Maryland, in and to the real estate and improvements described in these proceedings, caused or existing by reason of the claims of Florence L. Essom and the unknown heirs, devisees, personal representatives, descendants or successors of John Loats, deceased, and of Louis Loats, deceased, be and the same is hereby removed.

And it is further ADJUDGED, ORDERED AND DECREED that the said The Loats Female Asylum of Frederick City, in the County of Frederick, a body corporate of the State of Maryland, may sell and convey said real estate and improvements described in these proceedings or any part thereof without regard to the claims of the said Florence L. Essom or of the unknown heirs, devisees, personal representatives, descendants or successors of John Loats, deceased, or of Louis Loats, deceased.

Despite the holding of the Court and the passage of the foregoing order, title to the property was again challenged by the heirs of Loats. *See, Essom v. Loats Asylum,* No. 22,813, Equity. The court (McLaughlin, J.) held that while Loats intended to create a lasting and permanent institution, the language in his will burdened the Board to carry

out his intentions and did not create any implied condition subsequent in the land.

We concur with the judgment of the circuit court in the case *sub judice* because the Court of Appeals held in *Loats, supra,* that the sale of the property was consistent with the purposes of the charitable trust, free of any of the trust restrictions.

### IV. *Declaratory Judgment*

Count VI sought declaratory judgment. The court dismissed the previous counts and ruled:

> With respect to the allegations of Count VI, for the reasons detailed by the Court on the record, the Court determined that plaintiffs are not entitled to any of the relief prayed for in that Court as a matter of law. As a consequence, Plaintiff's Motion for Summary Judgment as to that count be and the same is hereby DENIED. For the same reasons and because it considered matters in addition to the allegations in the pleadings in reaching its decision, the Court, pursuant to Rule 2–322(c) of the Maryland Rules of Procedure, hereby treats defendant's Motion to Dismiss as to Count VI as a Motion for Summary Judgment which is hereby granted.

Appellant contends that the circuit court erred because it failed to declare the rights of the parties. We hold that the trial court's ruling from the bench did declare the rights of the parties:

> Now, essentially they have asked whether the will imposes charitable trust on the land, and I, in the ruling on the other motion, have ruled that it doesn't. Whether the deed conveyed the property free of charitable purposes; and I, in essence, on another count, have ruled that it does. Whether the construction of the stadium and lease complies with the agreement between Frederick and Loats concerning the use of the land, and in essence I have said they don't have standing on that count, and that if there was an agreement it had merged with the deed. I believe that that Count VI is disposed of by reason of

my ruling on the other counts.... I don't think its appropriate to dismiss it. I think its a matter of rulings; I've ruled on it.

MR. BOULAND [Counsel for plaintiff]: I think what Your Honor's doing is issuing a declaratory judgment, although one adverse to what my clients requested. So you're not dismissing it; you're saying, "I'm granting declaratory judgment, and this is it."

THE COURT: Well, I'm not so sure I am. We're talking about a procedural point here, which I'm not clear about. What I've said is that as a result of ruling on the other motions, all the questions that have been asked by the plaintiff are answered.

MR. BOULAND: I believe that's correct. Your Honor.

It is well settled that "seldom, if ever, in a declaratory judgment proceeding should a ... petition [be] dismissed without a declaration one way or the other of the rights of the parties." *Hunt v. Montgomery County,* 248 Md. 403, 410, 237 A.2d 35 (1968); *Koontz v. Ass'n. of Classified Employees,* 297 Md. 521, 529, 467 A.2d 753 (1983). Even where a declaration may be contrary to the desires of a movant, a trial judge should make a declaration. *Broadwater v. State,* 303 Md. 461, 467, 494 A.2d 934 (1985). Indeed, "[n]umerous ... cases have said that in a declaratory judgment action the court must declare the rights of the parties." *Id.* at 468, 494 A.2d 934. Instances where a trial court in a declaratory judgment proceeding may properly not declare the rights of the parties are quite limited. *Id.* Situations where a court may dismiss a declaratory judgment proceeding include a finding that the question was moot and inability to make a declaration where the case lacked the necessary parties. *See Koontz, supra,* 297 Md. at 529–530, 467 A.2d 753.

Ordinarily we would affirm the judgment; however, in the case *sub judice,* since the court declared the rights of the parties on the record but did not reduce the declaration to a judgment, we remand and direct that the court formalize its declaration into a judgment.

JUDGMENT NEITHER AFFIRMED NOR REVERSED; CASE REMANDED FOR PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLANT.