HARRIETT KOONTZ ET AL. *v.* ASSOCIATION OF
CLASSIFIED EMPLOYEES, AMERICAN FEDER-
ATION OF STATE, COUNTY AND MUNIC-
IPAL EMPLOYEES, AFL-CIO, LOCAL
# 2250, INC.

[No. 31, September Term, 1983.]

*Decided November 8, 1983.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Robert J. Greenleaf* for appellants.

*Barbara Kraft,* with whom were *Kirschner, Weinberg, Dempsey, Walters & Willig* and *Harriet Cooperman* on the brief, for appellee.

RODOWSKY, J., delivered the opinion of the Court.

Plaintiffs-Appellants are members of an employee organization which represents the noncertificated employees of the Board of Education of Prince George's County (the Board). On June 10, 1982 the employee organization held an assemblage of certain of its members for the purpose of voting for or against changes in the existing multi-year agreement between the employee organization and the Board. These changes were proposed because the county fiscal authorities had not appropriated sufficient monies fully to fund the existing agreement for the 1983 fiscal year. In the trial court the Appellants, contending that notice of the meeting was defective, unsuccessfully sought an affirmative injunction requiring a properly noticed meeting to be

held. Because under Md. Code (1978 & 1982 Cum. Supp.), Subtitle 5, "Organizations of Noncertificated Employees," of Title 6, "Teachers and Other Personnel," of the Education Article, the contract changes became effective, whether or not they were ratified at a duly noticed meeting of the employee organization, we shall dismiss the appeal as moot.

In Prince George's County noncertificated employees of the Board, with exceptions not here relevant, are represented by an employee organization "on all matters that relate to salaries, wages, hours, and other working conditions," as permitted by § 6-503 (a) of the Education Article.[1] That employee organization is the Appellee, Association of Classified Employees, American Federation of State, County and Municipal Employees, AFL-CIO, Local # 2250, Inc. (Union). A negotiated contract between the Board and the Union, as permitted by § 6-510, was entered into for the period August 1, 1981 through June 30, 1984 (the Contract). Under the Contract covered employees were to receive a cost of living increase beginning July 1, 1982 and, effective January 1, 1983 were to receive an additional increase of $.18 per hour. For the fiscal year beginning July 1, 1982 and ending June 30, 1983 Prince George's County did not appropriate the full amount requested by the Board.[2] The amount actually appropriated to the Board for fiscal 1983 would have been known by June 1, 1982. *See* Charter, Prince George's County, Maryland, Article VIII, § 814, Prince George's County, Md. Code Part I (1979, 1981 Supp.). As its response to the cuts made in its budget, the Board initially proposed reductions in force (RIFs) of employees represented

---

1. Unless otherwise specified all references to statutes are to Md. Code (1978), Education Article. Section 6-501 (c) defines an "Employee organization" to mean an organization that:

(1) Includes noncertificated employees of a public school employer; and
(2) Has as one of its main purposes the representation of the employees in their relations with that public school employer.

2. There is no contention that the amount actually appropriated fell below any minimum mandated by the Education Article. The Attorney General has opined that appropriation of the county share of the budget of a county board of education is mandatory under § 5-202. *See* 64 Op. Att'y Gen. 51 (1979).

by the Union which would have displaced approximately 255 individuals (105 demoted, 150 RIFed). The RIFs were scheduled to take effect on June 15, 1982, at the close of the school year. In order to avoid displacements, the Union requested negotiations with the Board. After a number of meetings, the negotiators reached agreement on Contract modifications on the evening of June 8, 1982. The proposed modifications eliminated the need for RIFs and demotions. In their place the wage increases scheduled for July 1982 and January 1983 were to be delayed until April 1983 and a mandatory three-day furlough without pay was to be instituted. If additional monies were later authorized, they were to be applied retroactively to the scheduled pay raises.

At a meeting of the executive board of the Union held on June 8, 1982 it was unanimously resolved to proceed to agreement with the Board on the above-described modifications and to report the modifications to the Union membership at a special meeting to be held June 10, 1982. In the past, when the Union membership voted on contract ratification, it was the practice to vote by mail. This ordinarily required 30 days from mailing to final tallying of the votes. The Union's executive board was of the view that it had a duty to inform the Union members of the proposed modifications and to afford them an opportunity to ratify, but it was also of the view that the membership vote should be taken before June 15. For these reasons mail balloting was not used and, instead, a general membership meeting was called. Notice of this meeting was given by written bulletins sent through the inter-office mail system to all of the 220 work stations staffed by Union employees. Through the cooperation of the Board, the meeting was also announced on June 9 and 10 over the public address systems at all locations. In addition, Union stewards at each work station were instructed by telephone to disseminate notice by word of mouth. Over 700 members attended the June 10 meeting. Four hundred and fifty voted in favor of the modifications and 144 voted against them. On June 14 the Board met and voted unanimously to ratify the modifications.

The Union is a Maryland nonstock corporation. Neither its charter nor its by-laws address the subject of notice for a regular or special meeting of members.[3] On June 18, 1982 the Appellants, Harriett Koontz (Koontz), Brenda Lowery and Mary Vane, brought this action in the Circuit Court for Prince George's County, Maryland. They alleged that notice as given by the Union for the June 10 membership meeting was governed exclusively by Md. Code (1975), § 2-504 of the Corporations and Associations Article (C&A), as made applicable to nonstock corporations by C&A § 5-201, and that these provisions had not been complied with.[4] Indeed, Koontz testified that she had no actual knowledge of the meeting until after it had been held. Appellants' prayers for specific relief asked the trial court to "determine that the Special Meeting, and the vote at that meeting . . . are null

---

3. Md. Code (1975), § 5-202 (b) (4) of the Corporations and Associations Article authorizes a nonstock corporation to "[p]rescribe the manner of giving notice of any meeting of its members" and to do so "[n]otwithstanding any other provision of [the Corporations and Associations Article], the charter or bylaws." We intimate no opinion on whether "the manner of giving notice" includes the minimum time between the notice and the meeting.

4. Md. Code (1975), § 2-504 of the Corporations and Associations Article reads in pertinent part:

§ 2-504. Notice of meeting.

(a) *Secretary to give notice.* — Not less than ten nor more than 90 days before each stockholders' meeting, the secretary of the corporation shall give written notice of the meeting to:

(1) Each stockholder entitled to vote at the meeting; and

(2) Each other stockholder entitled to notice of the meeting.

(b) *Contents of notice.* — The notice shall state:

(1) The time and place of the meeting; and

(2) The purpose of the meeting, if:

(i) The meeting is a special meeting; or

(ii) Notice of the purpose is required by any other provision of this article.

Md. Code (1975, 1983 Cum. Supp.), § 5-201 of the Corporations and Associations Article reads:

§ 5-201. Application of Maryland General Corporation Law.

The provisions of the Maryland General Corporation Law apply to nonstock corporations unless:

(1) The context of the provisions clearly requires otherwise; or

(2) Specific provisions of this subtitle or other subtitles governing specific classes of corporations provide otherwise.

and void" and that the trial court "order a new Special Meeting be held upon timely written notice to union members for the purpose of considering the proposal to modify the union's contract with the Board . . . ."

The Union filed an answer to the complaint and to a show cause order which was served with it. At an August 20, 1982 hearing in open court pursuant to the show cause order the Union filed written objections to the requested relief in a paper headed, "Motion to Dismiss . . . ." Exhibits were introduced and testimony taken. By an opinion and order of October 19, 1982 the trial court decreed "that the Motion to Dismiss filed by [the Union] be and the same is hereby granted, and judgment is hereby entered in favor of [the Union]." This disposition of the case was based on an application of the equitable doctrine of comparative hardship and consequently was directed primarily to the claim for injunctive relief.

Appellants appealed to the Court of Special Appeals. We granted certiorari on our own motion prior to consideration of the matter by the intermediate appellate court. Prior to argument in this Court, the Union moved to dismiss the appeal as moot. We deferred action on that motion until after argument on the merits. The motion to dismiss will be granted, but for a reason which varies somewhat from those advanced by the Union.[5]

Because the shortage of funds to carry out the salary increases called for by the Contract resulted from the decision of the fiscal authorities of Prince George's County in appropriating for fiscal 1983 less than the Board's budget requests, the controlling law is § 6-511 which provides:

---

**5.** In its motion the Union argued that under § 6-510 (a) (1) (ii) the School Board and Union were required to sign and implement the Contract modifications agreed to by the parties' representatives on June 8, 1982. Also relied upon was certain county council action which occurred after the appeal was noted.

If the fiscal authority does not approve enough funds to implement the negotiated agreement, the public school employer shall renegotiate the funds allocated for these purposes by the fiscal authority with the employee organization before the public school employer makes a final determination in accordance with the timetable and procedure established by the State Board.

Under this section the Board makes the "final determination." We discussed this provision in *Montgomery County Council of Supporting Services Employees, Inc. v. Board of Education,* 277 Md. 343, 354 A.2d 781 (1976). That case arose under § 6-511's predecessor which contained no differences material to the issue at hand. *See* Md. Code (1957, 1975 Repl. Vol.), Art. 77, § 160A (j) (1). Like the case at bar, *Montgomery Co. Council* was precipitated by the failure of county fiscal authorities to appropriate the amount necessary fully to fund salary increases both for teachers and for supporting personnel as called for by existing collective bargaining agreements. The collective bargaining representative of the noncertificated employees challenged the method by which the Montgomery County Board of Education determined to apply the available funds. There we said that "the School Board has been given the statutory duty to make the final determination in these matters" and cited to the predecessor statute. *Id.* at 351, 354 A.2d at 785. Indeed, the Contract between the Board and the Union in this case recognizes in ARTICLE I that "nothing hereafter mentioned or agreed to shall be so construed as to substitute the legal obligations vested in the Board in accordance with law."

Under § 6-511, as applied to the facts of the instant case, it becomes altogether immaterial whether notice complying with the corporation laws was properly given for the June 10 general membership meeting of the Union, or whether a vote taken at that meeting was valid or void, or whether the Union membership ratified or did not ratify the modifications agreed to, or proposed to their respective principals by, the negotiators on June 8, 1982. The Board made the final deter-

mination under § 6-511 and effectively did so on June 14, 1982.

It is not necessary for us to determine in this case the precise application of that portion of § 6-511 reading, "in accordance with the timetable and procedure established by the State Board." Once the Board had made its determination, that determination was implemented for the first pay period of fiscal 1983. There were no RIFs, and members of the bargaining unit did not then receive their promised pay increases. Part of the available appropriated funds went to persons who otherwise would have been RIFed. Under the Contract, 12-month employees are paid on a 26 pay period schedule and 10-month employees are paid on a 22 pay period schedule. Once the plan determined by the Board to meet the appropriation shortfall became implemented, there was no remedy which the trial court could grant, even if the purported Union ratification were invalid. Once the eggs had been broken, there was no way for the trial court to unscramble the omelet. Indeed, even if the circuit court had under its general equity powers, and could constitutionally exercise, authority to order those who otherwise would have been RIFed to refund to the Board salary received for past pay periods, the Appellants did not request that relief, and those who would have been subject to a judgment for refunds were not joined as parties either individually, or through some theory of class action.[6]

Further, even if the Board's June 14 action was not intended by it to be an exercise of the power unilaterally to make the final determination under § 6-511, and even if "the timetable and procedure established by the State Board" would have allowed sufficient time after June 8, 1982 to give Union members 10 days' written notice, the Board's June 14 action still became final under § 6-511 before the circuit court acted on the Appellants' complaint. It had to be decided how much was to be paid to whom, and the *statutory*

---

**6.** We intimate no opinion as to whether, in this hypothetical scenario, a class action would properly lie.

deadline for making the first salary payments in fiscal 1983 was August 10, 1982. Subsection 304 (a) provides:

(a) *Payment.* — The salary of a teacher and the salary of a Prince George's County Board classified employee shall be paid:

(1) At least monthly during the school year; and

(2) On or before the tenth day of the month after the month for which the salary is due.

The State Board's "timetable" could not contravene the statute. Consequently, by August 20, 1982 when the case came on for hearing, the Board's decision to proceed with the negotiated modifications to the Contract could not be disturbed by the circuit court, at least in the framework of the case which Appellants had brought against the Union. A question is moot if, at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the court can provide. *See Hagerstown Reproductive Health Services v. Fritz,* 295 Md. 268, 271-72, 454 A.2d 846, 848, *cert. denied,* U.S. , 103 S. Ct. 3538, 77 L. Ed. 2d 1389 (1983) and cases cited therein.

Appellants also argue that the trial court erred in dismissing their complaint without rendering a declaratory judgment which would have determined the Appellants' claim of right to a notice as prescribed by C&A § 2-504. It is true that "seldom, if ever, in a declaratory judgment proceeding should a . . . petition [be] dismissed without a declaration one way or the other of the rights of the parties." *See Hunt v. Montgomery County,* 248 Md. 403, 410, 237 A.2d 35, 38 (1968). However, in the instant case, whether the notice for the June 10, 1982 Union general membership meeting was valid is now entirely academic. Even if the relief requested is a declaratory judgment, the judgment will not be rendered when the question is moot and there is no "imperative and manifest urgency to establish a rule of future conduct in matters of important public concern, which may frequently recur, and which, because of inherent time

constraints, may not be able to be afforded complete appellate review." *See Attorney General v. Anne Arundel County School Bus Contractors Ass'n,* 286 Md. 324, 328, 407 A.2d 749, 752 (1979). And *see Bishop v. Governor,* 281 Md. 521, 380 A.2d 220 (1977); *Potts v. Governor,* 255 Md. 445, 258 A.2d 180 (1969); *Area Development Corp. v. Free State Plaza, Inc.,* 254 Md. 269, 254 A.2d 355 (1969). Appellants' requested declaratory judgment does not fall within the exception to the mootness rule, particularly when the Union's motion to dismiss reflects that the Union had set in operation procedures directed to amending its constitution with respect to notice of regular and special membership meetings.

> *Appeal dismissed.*
> *Costs to be paid by the appellants.*