590 A.2d 1074

Alfred W. SPATES

v.

MONTGOMERY COUNTY, Maryland, et al.

No. 1440 Sept. Term, 1990.

Court of Special Appeals of Maryland.

June 4, 1991.

592

Richard W. Lawlor (Lawlor & Pappadeas, P.A., on the brief), Silver Spring, for appellant.

Kaye Brooks Bushel, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee, State.

David J. Frankel, Asst. County Atty. (Joyce R. Stern, County Atty. and H. Christopher Malone, Sr. Asst. County Atty., on the brief), Rockville, for appellees.

Argued before WILNER, C.J., and WENNER, J., and WILLIAM M. CAVE, Judge (Specially Assigned).

WILNER, Chief Judge.

"Taxes," said Justice Holmes in dissent, "are what we pay for civilized society...." *Compania General De Tabacos De Filipinas v. Collector, Etc.,* 275 U.S. 87, 100, 48 S.Ct. 100, 105, 72 L.Ed. 177 (1927). The necessity—and certainty—of taxes does nothing to increase their popularity, however. People pay them, but not without grumbling.

Alfred Spates has a particular complaint about the State and county property tax, and he has done more than grumble. In a declaratory judgment action filed in the Circuit Court for Montgomery County, he asked that "the imposition of tax on land owners by the County on behalf of itself and for the State be declared unconstitutional." His complaint is that, while the State and county impose a tax on real estate, they do not tax mortgages, stocks, or bonds, and that the lack of a tax on such personalty creates an unfair burden on landowners. Presumably in an attempt to show that he is, himself, injured by this system of selective taxation, he alleged that he owns real property in Montgomery County that is subject to State and county property taxes and that he also owns a mortgage on other land in the county and that the mortgage is not subject to such taxes. This scheme of taxing real property but not personal property, he asserts, offends Art. 15 of the Maryland Declaration of Rights and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.

The State and the county moved to dismiss Mr. Spates's second amended complaint on the grounds that it (1) failed to allege any special damage or special interest on Mr. Spates's part distinct from that of the general public, (2) did

not present an "actual controversy," "antagonistic claim," or "legal relation, status, right or privilege," and (3) by omitting to specify the particular statutes challenged, failed to present a justiciable controversy.

At a hearing on the motion, the court acknowledged that it understood fully the nature of Spates's complaint, but, without mentioning any of the grounds raised by the defendants, decided to grant the motion anyway, hoping that Spates would appeal. Addressing counsel for Spates, it announced its decision thusly:

"I really do think you maybe are on to something here, but on the other hand, I do think you have to, in my view, sharpen it up a little bit. So I am going to grant their motion to dismiss. But I want to make it a little bit clear on the record.

At least arguably there may be a disparity, and there may be a failure of due process involved in all of this. I am inviting you, if you wish, to get it on to the rocket docket. I will sign whatever order you need and see if the folks in Annapolis will want to take a longer and harder look on it than we can."

In point of fact, it does not appear that any order was ever signed; at least none appears in the record. Aside from the transcript of the court's remarks, the only record of its decision is a docket entry for that day—July 19, 1990—reciting that a hearing was held on the motion to dismiss the second amended complaint with prejudice and that the motion was granted. The notice of appeal, filed August 16, 1990, was "from the Order of the Court dismissing Plaintiff's Amended Complaint without leave to amend on July 19, 1990."

■ The manner in which the case was disposed of raises a number of procedural questions. The first of these is whether an appealable judgment was entered. In light of the court's parting remark, the sensible thing would have been for counsel to present an order and see that it was signed and docketed before noting the appeal. Then, at

least, the jurisdictional lines would have been clear and this discussion would have been unnecessary. Having said that, we think that, considering the record as a whole, an appealable, if not a proper, judgment was entered.

Although the court stated its willingness to sign an order, it did not specifically direct that one be prepared or indicate that one was necessary. *Compare Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767 (1989). Md.Rule 2–601(a) states that upon a decision by the court denying all relief, which this decision effectively did, the clerk shall forthwith enter the judgment. The clerk does that, according to Rule 2–601(b), by making a record of it in writing on the docket. As pointed out in *Doehring v. Wagner*, 311 Md. 272, 274–75, 533 A.2d 1300 (1987), when the court "makes a ruling which is designed to and which in substance does finally terminate the case in that court, and when that ruling becomes embodied in whatever formal action is necessary to constitute a final judgment, an appeal may be taken." The decision announced by the court granting the motion to dismiss the complaint, in its entirety and with prejudice, effectively terminated Spates's ability to proceed further in the Circuit Court, and when the clerk recorded that decision on the docket, an appealable judgment was entered.

Having concluded that a judgment was entered, we now look to the propriety of that judgment.

 Time and time and time again, the Court of Appeals and this Court have made clear that "seldom, if ever, in a declaratory judgment proceeding should a [motion to dismiss] be sustained or the [complaint] dismissed without a declaration one way or the other of the rights of the parties." *Hunt v. Montgomery County*, 248 Md. 403, 410, 237 A.2d 35 (1968); *Mauzy v. Hornbeck*, 285 Md. 84, 91, 400 A.2d 1091 (1979); *Broadwater v. State*, 303 Md. 461, 494 A.2d 934 (1985). A motion to dismiss should be used in this kind of proceeding only to challenge the legal availability or appropriateness of the remedy, and it should be granted only upon a finding by the court that the remedy is indeed

unavailable or inappropriate. *Hunt v. Montgomery County, supra.*

■ The defendants did allege in their motion that, for various reasons, Spates was not entitled to a declaratory judgment of any kind, but other than to note the need to "sharpen it up a little bit" (which appears to be wholly inconsistent with a dismissal of the complaint with prejudice and thus without leave to amend), the court did not grant the motion for any of those reasons. What it seemingly did was to dismiss the case in order to allow *us* to decide more quickly the substantive question of whether there is a Constitutional deficiency in the State and county property tax laws. That is not a proper disposition of a declaratory judgment proceeding. Having failed to find a legitimate reason not to declare the rights of the parties, it was incumbent upon the court to do so. Still, because an appellate court can affirm a trial court's decision on any ground adequately shown by the record, even if not relied upon by the trial court, *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221 (1979), *cert. denied,* 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), we need to see if any of the grounds alleged in the motion to dismiss would warrant dismissal of the complaint.

The three grounds stated in the motion to dismiss have been consolidated into two in appellees' brief, namely: (1) by failing to identify particular statutes he regards as unconstitutional, Spates has not presented a justiciable issue, and (2) by claiming ownership of currently untaxed personal property—the mortgage—Spates has failed to show that he is being particularly injured by the current law that taxes only real property, which negates his standing to complain about the current law.

■ Both of these challenges address a more fundamental problem—the fact that the second amended complaint is poorly drawn and seriously lacking in specifics. The precise nature of Spates's complaint, as explained to us at oral argument, is not entirely clear from the pleading. His basic

point is that, by failing to tax personal property, the State and county have placed an unfair, disproportionate, and non-uniform tax burden on the owners of land. That much, at least, *is* clear from the second amended complaint and was apparent to the Circuit Court. Thus, the failure to identify particular sections of the Tax–Property article of the Code is really not telling in this case. Spates has challenged the system of taxation authorized by law, which includes those sections defining terms, imposing the property tax, determining the kinds of property to be taxed, establishing the method of assessment, and providing for the collection of the tax. Given the nature of his attack, it would, as he contends, be well-nigh impossible, and quite unnecessary in our view, to pick through the entire Tax Code and identify only those specific statutes or parts of statutes that directly support the system he challenges.

The second defense asserted by appellees has somewhat more substance, in part because the complaint does not clearly set forth the baleful consequence to Spates from the current system. At oral argument, he put forth the view that the Federal and State Constitutions require that *all* property of every kind and description must be taxed. He seemed to waffle on whether any exemptions can be allowed, at one point saying no and at another allowing for exemptions if the appropriate legislative body gives a good reason for the exemption.

At least to some extent, the Legislature has done the very thing Spates demands. In Md.Ann.Code, Tax–Property art. § 6–101, it has declared that, except as otherwise provided by statute, "all property located in this State is subject to assessment and property tax...." The exceptions are intangible personal property owned by persons who are not corporations (§ 6–101(b)) and property specifically exempted under title 7 of the article, among which is some, but not all, personal property. The complaint, then, is not that the Legislature has failed to provide for the taxability of personal property, but that it has chosen, as a matter of policy, not to tax some of it. To the extent this

aggrievement is expressed in the second amended complaint, it lies in the assertion that the tax on real property is unfair because a tax is "yet not imposed by the County and the State upon holders of personal property to include but not be limited to mortgages, stocks, bonds, boats, and vehicles...."

Assuming that the argument presented to us can fairly be drawn from what is stated in the second amended complaint, the effect of the current system on Mr. Spates becomes most unclear. Although he alleged ownership of a mortgage of unknown amount,[1] he did not say what kinds or amounts of other personal property he owned and thus gave no indication of whether the taxation of currently untaxed personal property would, in fact, lessen his gross property tax burden. Implicit in his complaint, of course, is at least the hope, if not the averment, that this would be so.

It has long been the law that, while taxpayers may challenge the constitutionality of a statute when, as applied, the statute would increase their taxes, if they "cannot show a pecuniary loss or that the statute results in increased taxes to them, they have no standing to challenge it." *Murray, Etc. v. Comptroller*, 241 Md. 383, 391, 216 A.2d 897, *cert. denied*, 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed.2d 55 (1966). The *amount* of loss need not be great and need not be specified in the complaint. *Citizens P. & H. Ass'n v. County Exec.*, 273 Md. 333, 344, 329 A.2d 681 (1974). Indeed, where the statute is challenged because it may cause a greater tax burden to the plaintiff, the plaintiff is "not required to allege 'facts which *necessarily* lead to the conclusion that taxes will be increased,'" but rather "[t]he test is whether [the plaintiff] reasonably *may* sustain a pecuniary loss or a tax increase...." *Id.* at 344, 329 A.2d 681 (emphasis in original), quoting in part from *Citizens P. & H. Ass'n v. County Exec.*, 20 Md.App. 430, 434, 316 A.2d 263 (1974).

---

1. In the record there appears some evidence that the mortgage had an initial principal of $250,000.

The second amended complaint certainly is short on specifics. Only by inference can one find from the averments therein anything more than the bare possibility that a spreading of the tax over currently untaxed personal property would lessen Spates's gross property tax burden. The simple application of mathematics and logic would indicate, however, that, in the absence of any increase in government expenditures, a spreading of the tax burden to presently untaxed property will necessarily result in a lower tax burden on real property now taxed. How this would affect current owners of real property would, of course, depend on how much personalty they own, how much of it would be subject to taxation, and the rate at which it would be taxed. Obviously, not all landowners would be affected equally; those who own a significant amount of personalty may find Mr. Spates's proposition far more onerous than the current law.

This is not a case, then, in which we can confidently find that Mr. Spates is *not* paying more in property taxes than he would if the tax were applied to personalty as well. Implicitly, at least, he is claiming that his tax burden is higher under the present law than it would be otherwise. Accordingly, we shall not affirm the dismissal on this ground.

As it is evident that the second amended complaint should not have been dismissed, we turn to whether Mr. Spates is substantially entitled to the judgment he seeks—that the current system of property taxation is unconstitutional. Clearly and as a matter of law he is not.

■ Count I of the second amended complaint is founded upon a version of art. 15 of the Maryland Declaration of Rights that no longer exists. In the State's first Constitution, of 1776, there appeared, as art. 13 of the Declaration of Rights, three statements: that the levying of taxes by poll is oppressive and should be abolished; that paupers should not be assessed for the support of government "but every other person in the State ought to contribute his

proportion of public taxes for the support of government according to his actual worth in real or personal property within the State"; and that fines, duties, and taxes "may properly and justly be imposed or laid with a political view for the good government and benefit of the community." The first and third of these statements remain part of our Constitutional law, being now embodied in art. 15 of the Declaration of Rights. The second, upon which Spates relies in presenting his argument that State law requires the owners of personal property to contribute proportionately to the cost of government, was repealed in 1915 (1914 Md. Laws, ch. 390, ratified Nov. 2, 1915) and replaced with a new provision, which currently reads, in relevant part, as follows:

> "that the General Assembly shall, by uniform rules, provide for the separate assessment, classification and sub-classification of land, improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy...."

The cases cited by Spates for the proposition that the tax burden must be proportionally, if not equally, spread (*Maxwell v. State, ex rel. Baldwin*, 40 Md. 273 (1874); *State v. P., W. & B. R.R. Co.*, 45 Md. 361 (1876); and *Baltimore City v. Starr Church*, 106 Md. 281, 67 A. 261 (1907)) are all wholly inapposite, as they all hinged on the earlier version of art. 15.

The current provision does *not* require that all property be taxed or that all persons in the State with any property be proportionally taxed based on the value of their property. It requires that property be classified and sub-classified as the Legislature deems proper, and that taxes be uniform within each class or sub-class. The Legislature has indeed

classified and sub-classified real and personal property. Md.Ann.Code, Tax–Property art. § 8–101. The uniformity that is required is within a class or sub-class of property that the Legislature has created, not among different classes or sub-classes. *National Can Corp. v. Tax Comm.*, 220 Md. 418, 426, 153 A.2d 287 (1959). It is equally clear as well that, under art. 15 as it now exists, exemptions are permissible. *Murray, Etc. v. Comptroller, supra,* 241 Md. at 392, 216 A.2d 897. Accordingly, it is apparent that the refusal of the Legislature to tax all real and personal property in the State does not render the currently authorized property tax violative of art. 15.

■ Nor is that refusal in contravention of the Fourteenth Amendment. A century ago, in *Bell's Gap R. Co. v. Pennsylvania,* 134 U.S. 232, 237, 10 S.Ct. 533, 535, 33 L.Ed. 892 (1890), the Supreme Court stated:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all.... [I]t may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for the payment of money.... All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution."

Quoting another passage from *Bell's Gap,* the Court noted in *Madden v. Commonwealth of Kentucky,* 309 U.S. 83, 87–88, 60 S.Ct. 406, 408, 84 L.Ed. 590 (1940), that:

"The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that 'the fourteenth amendment was not intended to compel the states to adopt an iron rule of equal taxation,' and the

passage of time has only served to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies."

See also *Allied Stores of Ohio v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).

Upon this rationale, we find no Federal impediment to the Maryland system of property taxation.

For the reasons expressed in this Opinion, we shall vacate the order dismissing the second amended complaint and remand the case to the Circuit Court for a declaration that the Maryland and Montgomery County property taxes on real property are not unconstitutional under art. 15 of the Maryland Declaration of Rights or the Fourteenth Amendment to the United States Constitution.

ORDER DISMISSING SECOND AMENDED COMPLAINT VACATED; CASE REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR ENTRY OF DECLARATORY JUDGMENT IN CONFORMANCE WITH THIS OPINION; APPELLANT TO PAY THE COSTS.