716 A.2d 1085

**ALLIED INVESTMENT CORPORATION, et al.**

v.

**Peter O. JASEN.**

**No. 1873, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Sept. 2, 1998.

John F. Kaufman (Richard M. Kremen and Piper & Marbury, L.L.P., on the brief) Baltimore, for appellants.

Daniel S. Koch (Glenn M. Cooper, David M. Rothenstein, James R. Hammerschmidt and Paley, Rothman, Goldstein, Rosenberg & Cooper, Chartered, on the brief) Bethesda, for appellee.

Argued before HARRELL, THIEME and BYRNES, JJ.

HARRELL, Judge.

On 28 January 1997, appellants, Allied Investment Corporation and Allied Venture Partnership (collectively "Allied") filed a Complaint for Declaratory Judgment and Accounting in the Circuit Court for Montgomery County. In Counts I and II of its complaint, Allied sought a declaratory judgment regarding the validity and priority of William H. Miller's pledge in Allied's favor of his partnership interest in Ashmere Chesapeake Limited Partnership ("Ashmere Partnership") and his stock in Ashmere Chesapeake Corporation ("Ashmere Corporation"). Allied also sought, in Count III of its complaint, an accounting of any distributions and dividends regarding Miller's interests as may have been received by Peter O. Jasen, appellee. On or about 12 September 1997, Jasen moved to dismiss the complaint as time-barred by the statute of limitations. On 9 October 1997, the Circuit Court issued an order granting Jasen's motion and dismissing Allied's complaint. Allied presents two issues for our consideration, which we have rephrased:

I. Whether the circuit court erred in dismissing Counts I and II, for declaratory judgment, as barred by the statute of limitations.

II. Whether the circuit court erred in dismissing Count II, for an accounting.

## FACTS AND PROCEDURAL HISTORY

Allied alleged that on 30 May 1989 Allied and DC Bancorp Venture Capital Company ("DC Bancorp") lent to NNS Corporation ("NNS") an aggregate principal balance of $1,000,-000.00. Pursuant to a guaranty also executed on 30 May 1989, in connection with this loan, William H. Miller guaranteed to

Allied and DC Bancorp prompt and punctual payment of all balances owed. Miller's guaranty was secured by a Collateral Assignment of Ashmere Manor Interests, also dated 30 May 1989, pursuant to which Miller pledged to Allied and DC Bancorp, among other things, his partnership interest and proceeds thereof in Ashmere Partnership, as well as his stock in Ashmere Corporation.

Allied and DC Bancorp also purchased other NNS indebtedness owed to Maryland National Bank, Lewis E. Rehberg, and Rehberg Enterprises, Inc. (the "aggregate NNS indebtedness"), payment of which had been guaranteed by Miller. When NNS later sold its assets to Atlis Health Services, Inc., Allied and DC Bancorp entered into a Modification of Loans Agreement with Miller. The agreement, dated 20 February 1991, provided, among other things, to reduce the balance of the aggregate NNS indebtedness remaining due to Allied and DC Bancorp (the "shortfall amount"). Miller executed a guaranty in conjunction with the Modification of Loans Agreement, guaranteeing payment of the reduced aggregate NNS indebtedness. To secure the guaranty, Miller assigned and granted to Allied and DC Bancorp an additional security interest in all the collateral securing the notes and other obligations held by Allied and DC Bancorp under the Maryland National Bank, Rehberg, Allied, and DC Bancorp loans. Miller also executed a promissory note in favor of Allied and DC Bancorp for a principal amount equal to the shortfall amount. To secure his performance, the promissory note also granted to Allied and DC Bancorp [1] a security interest in all the assets, funds, property, and other rights owned by Miller.

In March 1991, Miller and appellee Jasen executed an agreement whereby Miller assigned his partnership interest in Ashmere Partnership and his stock in Ashmere Corporation to Jasen. Allied alleged that this agreement was executed "at a

---

1. DC Bancorp assigned to Allied all of its rights and interests in the aggregate NNS indebtedness and Miller's guarantees thereof, as well as its right to and interest in Miller's promissory note and guaranty for the payment of the shortfall amount and the collateral pledged to secure these obligations.

time when Jasen had knowledge of Miller's prior execution of the Collateral Assignment .of Ashmere Manor Interests in favor of Allied and DC Bancorp." Jasen, who is a limited partner in Ashmere Partnership and a shareholder in Ashmere Corporation, notified Allied of his position that the Collateral Assignment of Ashmere Manor Interests in favor of Allied and DC Bancorp was ineffective to pledge Miller's interests in the Partnership and Corporation, and that Miller's partnership interest and stock were effectively assigned to Jasen by the March 1991 agreement.

On 25 March 1991, Jasen sent Allied a letter "confirming" his understanding that Miller's assignment of partnership interest and stock to Allied was "null and void." [2] On 27 March 1991, Allied wrote back, stating that Miller's interests in the Partnership and Corporation stock were properly assigned to it, and that upon the declaration of default under Miller's guaranty, those assets became Allied's property. Several more letters were exchanged,[3] but the parties did not reach any meeting of the minds.

In January 1997, Allied filed a complaint for declaratory judgment and accounting. In its appellate brief, Allied asserted that Jasen's "antagonistic" claim to Miller's partnership interest in the Ashmere Partnership and his stock in the Ashmere Corporation "clouded title to these assets, thereby impairing the value of Allied's property interests in Miller's partnership interest ... and ... stock." Allied filed suit "in order to terminate the uncertainty and controversy regarding Allied's and Jasen's respective claims to these assets." Jasen responded by moving to dismiss Allied's complaint, arguing that Allied's claims for declaratory relief were, in truth, claims

---

**2.** Allied attached to its complaint copies of the correspondence between Allied and Jasen. Maryland Rule 2–303(d) provides that "[a] copy of any a written instrument that is an exhibit to a pleading is a part thereof for all purposes." Thus, we include "facts" from these exhibits to show the parties' respective positions regarding Miller's assignment of Ashmere interests.

**3.** It appears from the record that the most recent letter was dated 24 March 1992.

for conversion. Jasen asserted that because Allied filed suit more than three years after March 1991, when the cause of action purportedly arose, Allied's claims for declaratory relief and accounting were barred by the general three-year statute of limitations for tort actions.

The trial court concluded that, notwithstanding the fact that the principal counts were titled as declaratory judgment claims, they were actually claims for conversion and thus time barred by the statute of limitations. As to the action for accounting, the court found "no basis" for the claim "based on the dismissal of the first two counts."

## DISCUSSION

### I.

Maryland Rule 2–322(b)(2) allows a defendant to seek a dismissal on the ground that the complaint fails to state a claim upon which relief can be granted. A complaint fails to state a claim when, even if the allegations of the complaint are true, the plaintiff nevertheless is not entitled to relief as a matter of law. *Lubore v. RPM Associates, Inc.*, 109 Md.App. 312, 322, 674 A.2d 547, *cert. denied*, 343 Md. 565, 683 A.2d 177 (1996). When considering a motion to dismiss for failure to state a claim, the circuit court only examines the sufficiency of a pleading. *Id.* " 'The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action.' " *Id.* (citing *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md.App. 772, 784, 614 A.2d 1021 (1992)). On appeal, this Court "must assume the truth of all well-pleaded facts ... as well as inferences which may reasonably be drawn from those well-pleaded facts." *Lee v. Denro, Inc.*, 91 Md. App. 822, 828, 605 A.2d 1017 (1992). If the complaint contains any material facts that support the plaintiff's right to recover, this Court must reverse the order of dismissal. *Id.*

In the case at bar, appellant's flagship claims were for declaratory relief, authorized by the Maryland Uniform Declaratory Judgments Act, codified at Md.Code (1974, 1995 Repl.Vol., 1997 Supp.), §§ 3–401 to 3–415 of the Courts and

Judicial Proceedings Article (CJ). The purpose of the Maryland Uniform Declaratory Judgments Act is "to settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." CJ § 3–402. The court may grant a declaratory judgment if it will settle the controversy or uncertainty and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it. CJ § 3–409.

Declaratory judgments have been held appropriate when a party wanted his rights under a will construed, *Ryan v. Herbert*, 186 Md. 453, 458, 47 A.2d 360 (1946); when a property owner requested a decision as to the validity of a zoning ordinance, *Kracke v. Weinberg*, 197 Md. 339, 344, 79 A.2d 387 (1951); when an insurance company wanted an insurance policy construed to determine its rights and obligations, *Aetna Cas. & Sur. Co. v. Brethren Mut. Ins. Co.*, 38 Md.App. 197, 206, 379 A.2d 1234 (1977); when insurance carriers questioned which insurer bore the duty to defend a tort action, *Northern Assurance Co. of Am. v. EDP Floors, Inc.*, 311 Md. 217, 223, 533 A.2d 682 (1987); and, most recently, when an attorney sought a declaration as to whether a fee splitting arrangement violated the Maryland Lawyers' Rules of Professional Conduct, *Post v. Bregman*, 349 Md. 142, 146, 707 A.2d 806 (1998).

■ The Act casts the granting of a declaratory judgment as "an authorization, not a mandate." *Society of American Foresters v. Renewable Natural Resources Found.*, 114 Md. App. 224, 238, 689 A.2d 662 (1997). "Thus, a court has discretion 'to refuse a declaratory judgment when it does not serve a useful purpose or terminate a controversy.'" *Id.*

(quoting *Staley v. Safe Deposit & Trust Co.*, 189 Md. 447, 456–57, 56 A.2d 144 (1947)); *see also* CJ § 3–409(a) ("a court *may* grant a declaratory judgment ... if it will serve to terminate the uncertainty or controversy giving rise to the proceeding" (emphasis added)).

▮   The grant of a motion to dismiss, however, is rarely appropriate in a declaratory judgment action. *Christ v. Dep't of Natural Resources,* 335 Md. 427, 435, 644 A.2d 34 (1994). This is so, said the Court of Appeals, because

> "[w]here the plaintiff's pleading sets forth an actual or justiciable controversy, ... it sets forth a cause of action, even though the plaintiff may not be entitled to a favorable declaration on the facts stated in his complaint; that is, in passing on the [motion to dismiss,] the court is not concerned with the question whether the plaintiff is right in a controversy, but only with whether he is entitled to a declaration of rights with respect to the matters alleged."

*Popham v. State Farm Mut. Ins. Co.,* 333 Md. 136, 139–40 n. 2, 634 A.2d 28 (1993) (quoting *Hunt v. Montgomery County,* 248 Md. 403, 409, 237 A.2d 35 (1968)). Thus, "[a] motion to dismiss should be used in this kind of proceeding only to challenge the legal availability or appropriateness of the remedy, and it should be granted only upon a finding by the court that the remedy is indeed unavailable or inappropriate." *Spates v. Montgomery County,* 87 Md.App. 590, 595–96, 590 A.2d 1074 (1991). *See, e.g., Popham,* 333 Md. at 140–41 n. 2, 634 A.2d 28 (declaratory judgment ordinarily is not available when the issue has become moot); *Turnpike Farm v. Curran,* 316 Md. 47, 49, 557 A.2d 225 (1989) (declaratory judgment action is not available, and should be dismissed, where there is a pending action between the parties presenting the same issue); *Boyds Civic Ass'n v. Montgomery County,* 309 Md. 683, 688–700, 526 A.2d 598 (1987) (declaratory judgment action, to be entertained by the court, must present a justiciable controversy); *Haynie v. Gold Bond Bldg. Products,* 306 Md. 644, 654, 511 A.2d 40 (1986) (issues raised in declaratory judgment action will not be considered where they could have

been raised in pending tort litigation between the parties); *State v. Burning Tree Club,* 301 Md. 9, 18, 481 A.2d 785 (1984) (declaratory judgment action should be dismissed where the plaintiff lacks standing); *Koontz v. Ass'n of Classified Emp.,* 297 Md. 521, 529–30, 467 A.2d 753 (1983) (declaratory judgment action was properly dismissed where the dispute had become moot); *Aetna Cas. & Sur. Co. v. Kuhl,* 296 Md. 446, 449 n. 1, 463 A.2d 822 (1983) (declaratory judgment action "is inappropriate where the same issue is pending in another proceeding"); *Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 406, 347 A.2d 842 (1975) ("[W]here as here, the question to be resolved in the declaratory judgment action will be decided in pending actions, it is inappropriate to grant a declaratory judgment.").

In the case *sub judice,* the trial court properly dismissed Allied's declaratory judgment action because, for reasons we will explain, it is not "an available or appropriate type of remedy." *Christ,* 335 Md. at 435, 644 A.2d 34. Although couched in terms of declaring the "validity and priority" of Allied's interest in the Ashmere Partnership and Corporation,[4] Allied's complaint is, in effect, one for conversion. On 27 March 1991, Allied wrote to Jasen, stating that "[u]pon the declaration of default under Miller's guaranty, and the subsequent acceleration of the Lenders' remedies thereunder, [the Ashmere] assets became the property of the Lenders." Thus, Allied apparently did not merely want the court to construe the "validity and priority" of its claim, but instead wanted its property back. Allied wanted the court to order Jasen to disgorge the distributions, dividends, and other payments he may have received over the past six years, all of which assertedly were Allied's property upon Miller's default. Such goals are inconsistent with the purpose of the Declaratory

---

**4.** Although no Maryland cases address this particular issue, the Court of Appeals of Kentucky recently noted that "the majority position is that a complaint seeking a declaration regarding priority of liens presents a justiciable controversy fitting for declaratory relief." *Bank One Kentucky v. Woodfield Financial Consortium, L.P.,* 957 S.W.2d 276, 279 (Ky.Ct.App.1997); *accord* 26 C.J.S. *Declaratory Judgments* § 75 (1956).

Judgment Act, but entirely consistent with a claim for conversion.

## A.

Conversion has been defined as "the wrongful exercise of dominion by one person over the personal property of another." *Kalb v. Vega*, 56 Md.App. 653, 665, 468 A.2d 676 (1983). The tort of conversion "has been confined to those major interferences with the chattel, or with the plaintiff's rights in it, which are so serious, and so important, as to justify the forced judicial sale to the defendant which is the distinguishing feature of the action." W. Prosser, *Handbook of the Law of Torts*, 5th ed. § 15, p. 90 (1984) (footnotes omitted). In determining the seriousness of the interference with the plaintiff's rights, the court should consider factors such as (1) the extent and duration of the defendant's exercise and control; (2) the defendant's intent to assert a right which is inconsistent with the plaintiff's right of control; (3) the defendant's good faith or bad intentions; (4) the extent and duration of the resulting interference with the plaintiff's right of control; (5) the harm done to the chattel; and (6) the expense and inconvenience caused to the plaintiff. *Id.; accord Staub v. Staub*, 37 Md.App. 141, 144, 376 A.2d 1129 (1977), Restatement (Second) of Torts § 222A (1965).

This Court pointed out in *Kalb:*

Initially, the Court of Appeals spoke of conversion as the wrongful taking or asportation of a chattel with the intent by the taker to appropriate it to his own use. Later cases, however, have made clear that the gist of the tort is not necessarily the manner of acquisition of the property by the defendant, but rather his wrongful exercise of dominion over it. That may involve nothing more than the improper withholding of the property from the rightful owner; it may also be found to occur, however, when the person in possession destroys, modifies, or sells the property, those acts

being inconsistent with the owner's rights in the property and, at least implicitly, a clear denial of those rights.

*Kalb,* 56 Md.App. at 666, 468 A.2d 676 (emphasis omitted).

Allied first argues that the allegations in its complaint do not state a claim for conversion because it never asserted that Jasen exercised dominion over the Ashmere interests. Contrary to Allied's contentions, we find ample assertions in its complaint that Jasen was "improper[ly] withholding ... the property from the rightful owner." *Id.* Allied's complaint indicated that "Miller purported to assign to Jasen his partnership interest in the Partnership, and his stock in the Corporation" in March 1991. The complaint also alleged that "Jasen ... has notified Allied of his contention ... that Miller's partnership interest in the Partnership and stock in the Corporation were effectively assigned to Jasen pursuant to the subsequent March, 1991 'Agreement' between Miller and Jasen." Allied also claimed that "[s]ince March 1, 1991, Jasen has caused Ashmere ... to direct and deliver to Peter Jasen all dividends, payments, or other distributions of assets" made by Ashmere Limited Partnership and Corporation.

We also note that in Jasen's 25 March 1991 letter to Allied, Jasen wrote: "Essentially, I now own all of the interests in both the corporation and the limited partnership.... My ownership rights are now absolute." These assertions make clear that Allied understood at the time that Jasen was asserting a right that was inconsistent with Allied's right of control as well as his "wrongful exercise of dominion" over the Ashmere partnership and stock interests.

### B.

Allied next argues that because Miller's partnership interest in the Ashmere Partnership is an "undocumented intangible asset," a claim for conversion will not lie. We disagree. The Restatement (Second) of Torts § 242 (1965) provides:

CONVERSION OF DOCUMENTS AND INTANGIBLE RIGHTS

(1) Where there is conversion of a document in which intangible rights are merged, the damages include the value of such rights.

(2) One who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted.

Comment a notes:

> A document is a chattel and is, therefore, itself the subject of property. As such, it may be the subject of a conversion which makes the actor liable under the rules stated in §§ 223–241 for its value.... The document may ... embody a personal obligation or the title to a chattel represented by it. Thus, when by the appropriate rule of law, the right to the immediate possession of a chattel and the power to acquire such possession is represented by a document, such document is regarded as equivalent to the chattel itself. *So too, an intangible obligation may be represented by a document, which is regarded as equivalent to the obligation.* Under such circumstances, the document may be the subject of conversion as the embodiment of and as representing the title to the chattel or the obligation. In such cases the plaintiff is allowed to recover not only the value of the converted document, wich usually is slight in itself, but also the full value of the intangible rights identified with it, of which he has been deprived.

Restatement (Second) of Torts § 242 cmt. a (emphasis added). Comment e further provides:

> It was first held that the conversion of a document in which intangible rights were merged permitted recovery of damages for the appropriation of the rights so identified with it, as stated in Subsection (1). Then ... it came to be recognized by a number of courts that the recovery was for the interference with the intangible rights themselves, and that the conversion of the document was merely the means by which this was accomplished. The final step, which a good many courts have taken, was the recognition that there may

be "conversion" of such an intangible right, of a kind customarily identified with and merged in a document, even though the document itself is not converted.

Restatement (Second) of Torts § 242 cmt. e.

In *Lawson v. Commonwealth Land Title Ins. Co.*, 69 Md. App. 476, 481, 518 A.2d 174 (1986), we noted that Maryland courts have been about as liberal in the expansion of conversion to include the deprivation of intangible rights as any court, allowing actions for conversion based on a debt, *Brand Iron, Inc. v. Koehring Co.*, 595 F.Supp. 1037, 1040 (D.Md. 1984); a life insurance policy, *Durst v. Durst*, 225 Md. 175, 180, 169 A.2d 755 (1961); a check, *Maryland Casualty Co. v. Wolff*, 180 Md. 513, 515, 25 A.2d 665 (1942); a stock certificate, *Jones v. Ortel*, 114 Md. 205, 215, 78 A. 1030 (1910); and the appropriation of a type of promissory note, *Penniman v. Winner*, 54 Md. 127, 136 (1880). In *Kalb*, 56 Md.App. at 666, 468 A.2d 676, this Court found an action for conversion would lie when the defendant fraudulently acquired stock from the plaintiff, then refused to return the stock, and then sold the stock to a third party. All three acts, the Court held, could be treated as actionable conversions. *Id.* From the foregoing cases we glean that Miller's stock in Ashmere Corporation may be the subject of a suit for conversion, which Allied does not dispute. Allied does dispute, however, whether an interest in a limited partnership may also be the subject of a conversion action.

Specifically, Allied argues that a cause of action for conversion does not encompass claims for interference with undocumented intangible property rights, and that Miller's interest in the Ashmere Partnership is such an undocumented right. While we agree that the "[t]he process of expansion [of the law of conversion] has stopped with the kind of intangible rights which are customarily merged in, or identified with some document," Prosser, *supra*, at § 15 p. 92, we conclude that Miller's interest in the Ashmere Partnership is not an undocumented right, but is one customarily merged in or identified with a document.

The partnership at issue here is a Massachusetts limited partnership. According to Mass. Gen. Laws Ann. ch. 109, § 8(a) (West 1990 & 1997 Supp.), in order to form a limited partnership in Massachusetts, a certificate of limited partnership must be executed and filed in the office of the secretary of state. The certificate must include the name of the partnership, the character of its business, the address of the office and address of its registered agent, the name and address of each general partner, the latest date upon which the partnership is to dissolve, and any other matters the partners wish to include. Thus, according to the Massachusetts Code, a limited partnership *must* be evidenced by a document.[5]

No Maryland cases address whether conversion of a limited partnership interest evidenced by a certificate of limited partnership may be a viable cause of action. One Rhode Island case, however, lends support to the view that a partnership interest that is documented in a tangible form may be the subject of a conversion suit. In *Montecalvo v. Mandarelli,* 682 A.2d 918 (R.I.1996), Montecalvo sued the Mandarellis for breach of an oral partnership agreement, conversion, and fraud relating to a purported real estate venture partnership. *Id.* at 921. In discussing whether the partnership interest

---

**5.** The Corporations and Associations Article of the Maryland Code provides that to form a limited partnership, "all of the general partners must execute a certificate of limited partnership." Md.Code (1975, 1993 Repl.Vol. & 1997 Supp.), § 10–201(a) of the Corporations and Associations Article (CA). The certificate must list the name of the partnership, the address of its principal office in Maryland, the name and address of its resident agent, the name and mailing address of each general partner, the latest date upon which the partnership is to dissolve, and any other matters the partners wish to include. *Id.* In Maryland, as in Massachusetts, a limited partnership must be evidenced by a document.

Moreover, in order for a foreign limited partnership to do business in the Maryland, the partnership must register with the State Department of Assessments and Taxation. CA § 10–902. To register, the foreign limited partnership must submit an application, executed by the general partner, setting forth the name of the limited partnership, the state under whose laws it was formed, the character of the business, the name and address of the resident agent in Maryland, the address of the office required to be maintained in Maryland, and the names and addresses of each of the general partners. *Id.*

could be the subject of a conversion suit, the court noted that "the jury specifically found that no partnership existed; consequently, there can be no conversion of partnership property that did not belong to [Montecalvo]." *Id.* at 929. The court went on to state that

> even if [Montecalvo] had been able to prove the alleged oral-partnership agreement, we are of the opinion that a conversion action will not lie for a partnership interest or other intangible property right that is not manifested by a tangible instrument, such as a written agreement, a bankbook, or a promissory note, that may, in turn, be converted. Here, because there was no tangible document to manifest the alleged intangible partnership interest, the trial justice properly granted a directed verdict on the conversion claim.

*Id.*

■ In the case *sub judice*, the Ashmere Limited Partnership is documented by the "Limited Partnership Certificate and Agreement of Ashmere Chesapeake Limited Partnership," which was executed on 6 May 1988 and attached to Allied's complaint for declaratory relief. We thus conclude that Miller's intangible interest in the Ashmere Partnership was identified with and merged in a document, and that this interest may be the subject of a suit for conversion.[6]

## C.

Allied also argues that an action for conversion of Miller's stock in the Ashmere Corporation will not lie because conversion requires either a wrongful appropriation of the stock certificate or the wrongful retention of payment of the stock's value, neither of which Allied asserted in its complaint. Jasen concedes that he does not have actual possession of the stock certificate, but argues that possession is legally immaterial.

---

**6.** Although Allied did not raise this issue, we note that for reasons discussed in Section I.C., Jasen may be found liable for conversion of the limited partnership interest without having converted the partnership certificate itself.

As we noted above, the Restatement provides that "[o]ne who effectively prevents the exercise of intangible rights of the kind customarily merged in a document is subject to a liability similar to that for conversion, even though the document is not itself converted." Restatement (Second) of Torts § 242(2); *see also* § 242 cmt. e. Prosser also explained that the law allows conversion of an intangible right although the document evidencing that right has itself not been converted:

> What property may be the subject of an action for conversion was at first determined on the basis of the fiction of losing and finding. Any tangible chattel could be lost and found, and so could be converted.... Intangible rights of all kinds could not be lost or found, and the original rule was that there could be no conversion of such property. But this hoary limitation has been discarded to some extent by all of the courts. The first relaxation of the rule was with respect to the conversion of a document in which intangible rights were merged, so that the one became the symbol of the other—as in the case of a promissory note, a check, a bond, a bill of lading, or a stock certificate. This was then extended to include intangible rights to which a tangible object, converted by the defendant, was highly important—as in the case of a saving bank book, an insurance policy, a tax receipt, account books, or a receipted account. In all of these cases the conversion of the tangible thing was held to include conversion of the intangible rights, and to carry damages for it. *The final step was to find conversion of the rights themselves where there was no accompanying conversion of anything tangible—as, for example, where a corporation refuses to register a transfer of the rights of a shareholder on its books.*

Prosser, *supra,* at p. 90–91 (footnotes omitted).

■ Although no Maryland cases address this particular issue, the Supreme Court of South Carolina concluded that an action for conversion of stock may lie in cases where either the stock certificate or payment of the stock's value has been wrongfully retained by another. *Hite v. Thomas & Howard Co.,* 305 S.C. 358, 409 S.E.2d 340, 342 (1991), *overruled on*

*other grounds by Huntley v. Young,* 319 S.C. 559, 462 S.E.2d 860 (1995). In *Hite,* the court found that "[w]rongful refusal to pay over the amount represented by the stock certificates may support an action for conversion." *Id.* Thus, even though an alleged converter does not possess the stock certificate, he may be found liable for retaining payments resulting from that stock.

In its complaint, Allied alleged just such a wrongful retention, claiming that "[s]ince March 1, 1991, Jasen has caused ... Ashmere Chesapeake Corporation to direct and deliver to Peter Jasen all dividends, payments, or other distributions of assets made by Ashmere Corporation on account of William H. Miller's stock in Ashmere Chesapeake Corporation." We find the analysis in the Restatement and in *Hite* persuasive and adopt the position that an action for conversion may lie when intangible rights are converted without an accompanying conversion of the document evidencing those rights. Accordingly, the facts as alleged support an action for conversion against Jasen regarding Miller's stock interests in Ashmere Corporation.

### D.

Allied argues that its complaint is not barred by the statute of limitations. Specifically, Allied contends that because its claims are for declaratory judgment and not conversion, the statute of limitations regarding tort claims for conversion does not apply. As discussed *supra,* we agree with the trial court that Counts I and II of Allied's complaint, although cast as declaratory judgment claims, were in fact claims for conversion.

An action for conversion is governed by the general three-year statute of limitations set forth in § 5–101 of the Courts and Judicial Proceedings Article, which provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." *See Gillen v. Maryland Nat'l Bank,* 274 Md.

96, 107–08, 333 A.2d 329 (1975). An action begins to accrue on the date of the alleged wrong, assuming that the potential tort plaintiff is immediately aware that he or she has been wronged and is therefore put on notice that the statute of limitations is running. *Murphy v. Merzbacher*, 346 Md. 525, 532, 697 A.2d 861 (1997). The Court of Appeals has stated that statutes of limitation "are to be strictly construed, and absent a legislative creation of an exception, we 'will not allow any implied or equitable exception to be engrafted upon it.'" *Id.* at 532–33, 697 A.2d 861 (citations omitted).

■ Allied's complaint demonstrates that Allied failed to bring its conversion action against Jasen within the requisite time period. Miller first assigned his interests in the Ashmere Partnership and Corporation in May 1989, and reaffirmed the assignment to Allied in February 1991. In March 1991, Miller assigned those same interests to Jasen. Jasen notified Allied on 25 March 1991 of his view that Miller's assignment to Allied of the Ashmere interests was null and void and that Jasen owned all of the interests in both Ashmere Partnership and Ashmere Corporation. Allied was therefore put on notice as of March 1991 that Jasen had asserted control over the Ashmere interests. Allied and Jasen corresponded until 24 March 1992 regarding Miller's assignments, but Allied took no other action against Jasen after that date until it filed the complaint in January 1997.

■ Even if Allied's conversion claims were properly brought as declaratory judgment claims, the statute of limitations nevertheless bars the action. This Court recently explained how the statute of limitations applies to an action for declaratory relief:

We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for "coercive" relief upon the cause of

action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred.

*Commercial Union Ins. Co. v. Porter Hayden Co.,* 116 Md. App. 605, 659, 698 A.2d 1167, cert. den. 348 Md. 205, 703 A.2d 147 (1997) (quoting *Maguire v. Hibernia Savings & Loan Soc.,* 23 Cal.2d 719, 146 P.2d 673, 681 (1944)). Accordingly, because the underlying cause of action in the instant case, namely conversion, is barred by the statute of limitations, Allied's claim for declaratory relief based thereon is also barred. As we stated in Section I *supra,* the court may dismiss a complaint for declaratory judgment when the issue has become moot or when the remedy is no longer appropriate or available. Here, because the underlying claim is barred by the statute of limitations and is therefore unenforceable, the court cannot make a declaration as to these purported rights.

Jasen allegedly converted Miller's Ashmere Corporation and Partnership Interests in March 1991. Allied wrote to Jasen in March 1991 to inform him that "[u]pon the declaration of default under Miller's guaranty, and the subsequent acceleration of the Lenders' remedies thereunder, such assets became the property of the Lenders." Allied was on notice as of March 1991 that Jasen controlled what Allied considered its property. Thus, Allied's right to commence an action for coercive relief arose in 1991, and expired three years later. Any action for declaratory relief also expired at the same time. All the elements of conversion could have been maintained within three years of Miller's assignment to Jasen. Inexplicably, Allied waited six years before acting on its rights.[7] Al-

---

7. Because it is nowhere explained in the record extract of this case, we inquired of appellant at oral argument why it was that Allied waited six years to initiate any legal action against Jasen. The response offered was that Allied became embroiled in a legal action with Miller that was not concluded until shortly before the instant suit was filed. As this information nowhere appears in this record and is therefore not before us (nor was it before the circuit court), and because there are obviously a number of other factual inquiries demanded of such an explanation, we did not consider the proffered explanation in our resolution of this appeal.

though their claim for declaratory judgment is creative and imaginative, it is too little, too late.

## II.

Count III of Allied's complaint asked the court to compel Jasen to account to Allied for the payments, dividends, and any other distributions of assets that Jasen may have received since 1 March 1991 on account of Miller's partnership and stock interests in Ashmere Partnership and Corporation. The trial court, after dismissing Counts I and II as barred by the statute of limitations, stated: "[I]nsofar as count three is concerned, it is titled an accounting, but there is no basis based on the dismissal of the first two counts for an accounting." We agree.

A suit for an accounting is an equitable action that may be maintained when remedies at law are inadequate. *P.V. Properties v. Rock Creek Village*, 77 Md.App. 77, 89, 549 A.2d 403 (1988). An accounting is an appropriate remedy

> where one party is under an obligation to pay money to another based upon facts and records which are known and kept exclusively by the party to whom the obligation is owed, or where there is a confidential or fiduciary relation between the parties, and a duty rests upon the defendant to render an account.

*Id.* Because the statute of limitations barred Allied's counts regarding the Ashmere Partnership and Corporation, Allied cannot establish that Jasen is under any obligation to pay money to Allied, nor can Allied establish a confidential or fiduciary relation between the parties. The statute of limitations has extinguished the underlying rights the equitable remedy of accounting seeks to safeguard. Allied therefore has no claim to the Ashmere Partnership and Corporation interests and no right to request an accounting.

Even assuming Allied's action for accounting could have survived after dismissal of the first two counts, Allied's action would likely be barred by laches. Laches is an affirmative defense to an equitable action. *Shah v. HealthPlus, Inc.*,

116 Md.App. 327, 336, 696 A.2d 473, *cert. denied,* 347 Md. 682, 702 A.2d 291 (1997). "Under the equitable doctrine of laches, a lack of diligence on the part of a party who fails to assert his rights may result in his being equitably precluded from later asserting these same rights if the opposing party has incurred prejudice or injury." *Id.* When the party raising the defense shows prejudice and unnecessary delay, laches is appropriate when a party fails to act with due diligence in the pursuit and enforcement of his rights. *Id.* As the Court of Appeals stated more than one hundred years ago,

> Lapse of time may operate as a bar to a decree to account. In equity, *laches* and neglect are discountenanced. Stale demands without any effort to enforce them, cannot meet the aid of a tribunal which only lends its power to reasonable diligence. . . . [T]he indolence of those who are dilatory in recovering their property, and claiming what is due them, should be punished, and they should impute to themselves the punishment.

*Hall v. Clagett,* 48 Md. 223, 243–44 (1878). As the record makes clear, this is not a case in which Allied was "blamelessly ignorant" of the fact that Jasen had laid claim to the Ashmere interests. *See Shah,* 116 Md.App. at 338, 696 A.2d 473. Thus, we can find no reason on this record why Allied ought not to be charged with slumbering on its rights. *See id.*

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**